1   PATRICIA A. DAZA-LUU (SBN: 261564)
    pdazaluu@nicolaidesllp.com
2   JACOB F. MELI (SBN: 293143)
    jmeli@nicolaidesllp.com
3   NICOLAIDES FINK THORPE
    MICHAELIDES SULLIVAN LLP
4   777 South Figueroa St., Suite 750
5   Los Angeles, CA 90017
    Telephone:    (213) 402-1245
6   Facsimile:    (213) 402-1246

7

8   Attorneys for Defendant
    GENERAL INSURANCE
9   COMPANY OF AMERICA

10  HAROUT GREG KEOSIAN (SBN: 236352)
    hgk@keosianlaw.com
11  ZAREH JACK KEOSIAN (SBN: 303278)
    zjk@keosianlaw.com
12  EILEEN KEUSSEYAN (SBN: 149482)
    ek@keosianlaw.com
13  KEOSIAN LAW LLP
14  16530 Ventura Boulevard, Suite 555
    Encino, California 91436
15  Telephone:  (818) 986-9331
    Facsimile:   (818) 986-9341
16

17  Attorneys for Plaintiff
18  VAHE KHACHUNTS

19              UNITED STATES DISTRICT COURT

20             CENTRAL DISTRICT OF CALIFORNIA

21  VAHE KHACHUNTS, an individual,        Case No. 2:22-cv-09325-SPG (KSx)

22                  Plaintiff,             **JOINT NOTICE OF MOTION AND
                                           MOTION FOR SUMMARY
23  v.                                     JUDGMENT/PARTIAL SUMMARY
                                           JUDGMENT PURSUANT TO
24                                         FED.R.CIV.P. 56; MEMORANDUM
    GENERAL INSURANCE                      OF POINTS AND AUTHORITIES**
25  COMPANY OF AMERICA, a New
    Hampshire corporation; DOES 1          **Accompanying Documents:**
26  through 100, Inclusive,                Joint Appendix of Facts; Joint Appendix
                                           of Evidence; Joint Appendix of
27                  Defendants.            Objections; Declaration of Patricia A.
28

───────────────────────────────────────────────
JOINT NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/
PARTIAL SUMMARY JUDGMENT

Daza-Luu; Declaration of Laura Curtis;
Declaration of Brett Allen;
Supplemental Declaration of Patricia A.
Daza-Luu; Declaration of Vahe
Khachunts; Declaration of Zareh
Keosian; Declaration of Christopher
Croisdale; Declaration of Maribeth
Danko; Declaration of Tim Howard;
Proposed Order

Date:      November 1, 2023
Time:      1:30 p.m.
Dept.:     5C
Judge:     Hon. Sherilyn Peace Garnett

State Court Complaint filed:
November 17, 2022

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 1, 2023, or as soon thereafter as counsel may be heard before the Honorable Sherilyn Peace Garnett in Courtroom 5C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, defendant General Insurance Company of America ("General") will and hereby does move this Court for summary judgment, or in the alternative, partial summary judgment as to Plaintiff Vahe Khachunts' Complaint as to the following issues:

**Issue 1:** Plaintiff's First Cause of Action for Breach of Contract fails because General paid benefits for the repair of Plaintiff's two broken kitchen tiles as required by the subject General policy and California Fair Claims Settlement Practices Regulations ("Claims Regulations"), Section 2695.9(a)(2). While General understands Plaintiff also demands withheld depreciation owed on stolen personal property (contents), this issue is not before this Court, and further, is unsupported.

**Issue 2:** Plaintiff's Second Cause Action for Bad Faith consequently fails as a matter of law because there can be no bad faith absent a breach of contract.

**Issue 3:** In the alternative, Plaintiff's Second Cause of Action for Bad Faith fails under the genuine dispute doctrine.

**Issue 4:** In the alternative, Plaintiff's claim for punitive damages also fails as a matter of law, as there is no evidence that General acted with malice, oppression, or fraud in the handling of Plaintiff's claim.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the Joint Appendix of Facts, the Joint Appendix of Evidence, the Joint Appendix of Objections, the Declaration of Laura Curtis, the Declaration of Brett Allen, and the Declaration of Patricia Daza-Luu, filed concurrently herewith, the records and files of this action, and on such further oral and documentary evidence as may be presented at the hearing on this motion.

**Plaintiff's Opposition:**

**Response to Issue 1:** Defendant has failed to prove that there is no triable issue of material fact as to Plaintiff's First Cause of Action for Breach of Contract against Defendant. There are multiple triable issues of material facts in relation to this cause of action.

**Response to Issue 2:** Defendant has failed to prove that there is no triable issue of material fact as to Plaintiff's Second Cause of Action for Breach of Duty of Good Faith and Fair Dealing against Defendant. There are multiple triable issues of material facts in relation to this cause of action.

**Response to Issue 3:** Defendant has failed to prove that the genuine dispute doctrine is applicable.

**Response to Issue 4:** Defendant has failed to prove that it did not act with oppression, fraud, or malice. The evidence clearly shows that Defendant's conduct was oppressive, malicious, fraudulent, outrageous and despicable on many fronts.

Reasonable minds may differ as to these triable issues of facts; therefore, there are material questions of fact for a trier of fact to ultimately decide. Defendant cannot meet its burden in bringing its Motion, and Defendant has failed to demonstrate that there are no triable issues of facts with respect to Plaintiff's causes of action for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing.

Plaintiff's Opposition to General's Motion will be based on the Memorandum of Points and Authorities attached hereto, the Joint Appendix of Facts, the Joint Appendix of Evidence, the Joint Appendix of Objections, and the Declarations of Maribeth Danko, Christopher Croisdale, Tim Howard, Vahe Khachunts, and Zareh Jack Keosian, and upon all the accompanying exhibits, pleadings, records, and files herein, and upon such other oral and documentary evidence as may be presented at the time of the hearing of this motion.

/ / /

1    Pursuant to this Court's Standing Order for Motions for Summary Judgment

2    (ECF 15), General's counsel met and conferred with Plaintiff's counsel via

3    videoconference on September 1, 2023.

4    Dated:   October 3, 2023                    NICOLAIDES FINK THORPE

5                                               MICHAELIDES SULLIVAN LLP

6

7                                               By:     /s/ Patricia A. Daza-Luu

                                                       Patricia A. Daza-Luu
8                                                      Jacob F. Meli
                                                       Attorneys for Defendant General
9                                                      Insurance Company of America
10

11   Dated:   October 3, 2023                    KEOSIAN LAW LLP

12

13                                               By:     /s/ Zareh Jack Keosian

                                                       Harout Greg Keosian
14                                                     Zareh Jack Keosian
                                                       Eileen Keusseyan
15                                                     Attorneys for Plaintiff Vahe Khachunts
16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.      GENERAL'S INTRODUCTORY STATEMENT .........................................1

II.     PLAINTIFF'S INTRODUCTORY STATEMENT ......................................2

III.    GENERAL'S STATEMENT OF FACTS............................................4

     A.      The Burglary Claim.................................................4

     B.      Relevant Policy Provisions..........................................4

     C.      General Paid Repair Costs for the Chipped Tiles ....................5

     D.      General Paid Amounts Owed for Plaintiff's Stolen Contents ...........7

     E.      Plaintiff's Operative Complaint .....................................8

IV.     PLAINTIFF'S STATEMENT OF FACTS .......................................9

     A.      The Incident.......................................................9

     B.      General's Inadequate Investigation..................................10

     C.      General's Unqualified Experts. .....................................12

     D.      Unpaid and/or Untimely Paid Claim.................................13

     E.      General's Despicable Pattern and Practice. ..........................13

     F.      Resultant Damages. ...............................................14

     G.      Punitive Damages..................................................14

V.      GENERAL'S LEGAL STANDARDS..........................................14

     A.      Summary Judgment................................................15

     B.      Insurance Policy Interpretation ....................................16

     C.      Standards Regarding Regulatory Interpretation.......................17

VI.     PLAINTIFF'S LEGAL STANDARDS .......................................18

VII.    GENERAL'S ARGUMENT: SUMMARY JUDGMENT FOR
     GENERAL IS PROPER ...............................................19

A.   Under the Clear and Explicit Terms of the Policy, General's Proposed Repair for the Chipped Kitchen Tiles Is Proper ...............20

B.   The Claims Regulations Support that General is not Required to Pay for a Full Floor Replacement Because of Two Chipped Tiles .........................................................................................21

   1.   "Reasonably Uniform Appearance" Plainly Does Not Mean Perfect Match .................................................21

   2.   The Regulatory History Behind Section 2695.9(a)(2) Comports with this Section's Clear Language .......................23

C.   Where Plaintiff has Not Pled or Supported His Demand for Contents Depreciation, Such Demand Should Not Be Considered, or Provide a Basis for Plaintiff's Breach of Contract Claim ....................................................................24

   1.   Plaintiff Cannot Recover for Contents Depreciation When These "Damages" Were Never Pled ...........................24

   2.   Plaintiff's Demand for RCV on his Contents Claim is Unsupported ...........................................................26

D.   Because There is no Breach of Contract, Plaintiff's Claim for Bad Faith Fails.........................................................27

VIII.  PLAINTIFF'S OPPOSITION AS TO SUMMARY JUDGMENT ............27

A.   There are Several Triable Issues of Material Fact as to Plaintiff's First Cause of Action For Breach of Contract. .................27

   1.   Existence of a Contract. ..........................................28

   2.   Plaintiff's Performance. ..........................................28

   3.   General's Breach..................................................29

   4.   Plaintiff's Damages...............................................32

B.   There are Several Triable Issues of Material Fact as to Plaintiff's Second Cause of Action For Breach of The Covenant of Good Faith and Fair Dealing.......................................33

1.   General Paid a Fraction of The Policy Benefits It Owed to Plaintiff. ...............................................................33

IX.   GENERAL *ALTERNATIVELY* REQUESTS PARTIAL SUMMARY JUDGMENT AS TO THE BAD FAITH CLAIM WHERE THERE IS A GENUINE DISPUTE REGARDING THE TILE REPAIR....................37

X.   PLAINTIFF'S OPPOSITION AS TO PARTIAL SUMMARY JUDGMENT ON BAD FAITH.....................................................40

A.   The Genuine Dispute Doctrine is Inapplicable to the Present Case. ...................................................................40

XI.   GENERAL INSURANCE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES ...............................................................43

XII.   PLAINTIFF'S OPPOSITION AS TO PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES.................................44

A.   General Engaged in a Systemic, Company-Wide Bad Faith Effort to Save Money, Thereby Entitling Plaintiff to Punitive Damages. ......................................................44

XIII.   GENERAL INSURANCE: CONCLUSION................................................46

XIV.   PLAINTIFF: CONCLUSION ...................................................47

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970)............................................................18

*Allstate Ins. Co. v. Madan*,
  889 F. Supp. 374 (C.D. Cal. 1995) ................................15

*Amadeo v. Principal Mut. Life Ins. Co.*,
  290 F.3d 1152 (2002)........................................................44

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................15, 16, 18

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F. 3d 336 (9th Cir. 1996) ..........................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................15, 16, 18

*Employers Ins. of Wausau v. Granite State Ins. Co.*,
  330 F. 3d 1215 (9th Cir. 2003) ......................................22

*Fox v. Good Samaritan Hosp. LP*,
  467 F. Appx. 731 (9th Cir. 2012) ..................................25

*Fox v. Good Samaritan L.P.*,
  801 F.Supp.2d 883 (N.D. Cal. 2010)............................25

*Guebara v. Allstate Ins. Co.*,
  237 F. 3d 987 (9th Cir. 2001) ........................................19

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,
  254 F. 3d 825 (9th Cir. 2001) ........................................16

*Harmoush v. Allstate Ins. Co.*,
  CV 10-4664-GW(VBKx), 2012 WL 13005560 (C.D. Cal., Feb. 6, 2012 .......19

*Henney v. State Farm Gen. Ins. Co.*,
  No. 2:21-cv-01452-SPG-KS, 2023 WL 3564933 (C.D. Cal., Apr. 21, 2023)
  ................................................................ 37, 38, 39, 43

*In re Oracle Corp. Sec. Litig.*,
  627 F. 3d 376 (9th Cir. 2010) ................................................................16

*Maynard v. State Farm Mut. Auto. Ins. Co.*,
  499 F. Supp. 2d 1154 (C.D. Cal. 2007) .................................................37

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Amer.*,
  15 F.3d 885 (9th Cir. 2021) ............................................................19, 27

*Navajo Nation v. U.S. Forest Service*,
  535 F.3d 1058 (9th Cir. 2008) ...............................................................25

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  2010 F. 3d 1099 (9th Cir. 2000) .......................................................15, 26

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) .................................................................37

*Shenon v. N.Y. Life Ins. Co.*,
  No. 2:18-CV-00240-CAS (AGRx), 2020 WL 227870 (C.D. Cal. Jan. 13,
  2020) ......................................................................................................37

*State of Cal. ex rel. Cal. Dept. of Toxic Substances Control v. Campbell*,
  138 F.3d 772 (9th Cir. 1998) .................................................................15

*Tibbs v. Great Am. Ins. Co.*,
  755 F. 2d 1370 (9th Cir. 1985) ..............................................................43

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F. 3d 1054 (9th Cir. 2002) ..............................................................16

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006) .................................................................25

*Woods Apts., LLC v. U.S. Fire Ins. Co.*,
  No. 3:11-CV-00041-H, 2013 WL 3929706 (W.D. Ky., Jul. 29, 2013) ..........21

**<u>STATE CASES</u>**

*Acoustics, Inc. v. Trepte Construction Co.*,
  14 Cal.App.3d 887 (1971) .....................................................................28

*Am. Alternative Ins. Corp. v. Super. Ct.*,
  135 Cal. App. 4th 1239 (2006) ..............................................................16

*Bates v. Poway Unified School Dist.*,
    83 Cal. App. 5th 907 (2022) ...........................................................17

*Bosetti v. United States Life Ins. Co. in City of New York*,
    175 Cal.App.4th 1208 (2009) ...................................................40, 42

*Buss v. Superior Court*,
    16 Cal.4th 35 (1997) ......................................................................27

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*,
    90 Cal. App. 4th 335 (2001) ......................................................37, 40

*Egan v. Mutual of Omaha Insurance Company*,
    24 Cal.3d 809 (1979) ........................................... 31, 33, 44, 45

*Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*,
    66 Cal. App. 4th 1080 (1998) .......................................................16

*Fraley v. Allstate Ins. Co.*,
    81 Cal. App. 4th 1282 (2000) .......................................................37

*Greene v. United Services Auto. Ass'n*,
    936 A.2d 1178 (Sup. Ct. Pa., 2007) ..........................................20, 21

*Halberts Lumber, Inc. v. Lucky Stores, Inc.*,
    6 Cal. App. 4th 1233 (1992) .........................................................17

*Herman v. Los Angeles County Metro. Transp. Auth.*,
    71 Cal. App. 4th 819 (1999) .........................................................17

*Hoechst Celanese Corp. v. Franchise Tax Bd.*,
    25 Cal. 4th 508 (2001) ..................................................................17

*Jordan v. Allstate Ins. Co.*,
    148 Cal.App.4th 1062 (2007) .......................................................34

*Kamansky v. Liberty Mutual Ins. Co.*,
    2019 WL 2374343 (Sup. Ct. Conn., April 30, 2019) .....................23

*Love v. Fire Ins. Exch.*,
    221 Cal. App. 3d 1136 (1990) ................................... 19, 27, 33, 34

*Lyons v. Wawanesa Gen. Ins. Co.*,
    Nos. E044086, E045236, 2009 WL 1077294 (Cal. Ct. App., April 22, 2009)
    ...................................................................................22, 24, 38

*Mariscal v. Old Republic Life Ins. Co.*,
    42 Cal.App.4th 1617 (1996) ..................................................................... passim

*Maxwell v. Fire Ins. Exch.*,
    60 Cal. App. 4th 1446 (1998) ..................................................................19

*McCorkle v. State Farm Ins. Co.*,
    221 Cal. App. 3d 610 (1990) ....................................................................20

*McCoy v. Progressive West Ins. Co.*,
    171 Cal.App.4th 785 (2009) .....................................................................41

*Mcintosh v. Mills*,
    121 Cal.App.4th 333 (2004) .....................................................................27

*McMillin Homes Constr., Inc. v. Natl. Fire & Marine Ins. Co.*,
    35 Cal. App. 5th 1042 (2019) ..................................................................17

*Minkler v. Safeco Ins. Co. of Am.*,
    49 Cal. 4th 315 (2010) .............................................................................16

*Montrose Chem. Corp. v. Admiral Ins. Co.*,
    10 Cal. 4th 645 (1995) .............................................................................16

*Reichart v. Gen. Ins. Co. of Amer.*,
    68 Cal. 2d 822 (1968) ..............................................................................19

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
    78 Cal.App.4th 847 (2000) ................................................................34, 44

*Simon v. San Paolo U.S. Holding Co. Inc.*,
    35 Cal.4th 1159 (2005) ............................................................................45

*State Farm General Ins. Co. v. Lara*,
    71 Cal. App. 5th 148 (2021) ....................................................................22

*Suman v. BMW of North America, Inc.*,
    23 Cal. App. 4th 1 (1994) ........................................................................17

*Waller v. Truck Ins. Exch.*,
    11 Cal. 4th 1 (1995) .................................................................................16

*Wilson v. 21st Century Ins. Co.*,
    42 Cal.4th 713 (2007) ............................................................................ passim

**STATE STATUTES**

California Civil Code § 1636 ........................................................................16

California Civil Code § 1638 ........................................................................17

California Civil Code § 1641 ........................................................................16

California Civil Code § 1644 ........................................................................16

California Civil Code § 3294 ..................................................................44, 45

California Code Civil Procedure § 437c(o)(2) ............................................27

California Code of Regulations § 2695 ...................................................3, 10

California Code of Regulations, Title 10 § 2695.1(a)(1)..............................21

California Code of Regulations, Title 10, § 2695.7 (d) ...............................28

California Code of Regulations, Title 10, § 2695.9(a)(2)...................... passim

California Code of Regulations, Title 10, § 2695.9(d) ................................29

California Insurance Code § 2695.9 .............................................................29

California Insurance Code § 790.03(h)(5) ...................................................10

Conn. Gen. Stat. § 38a-316e(a)....................................................................23

**RULES**

Fed. Civ. Proc. Before Trial § 14:27.1 (2014) ...........................................24

Federal Rule of Civil Procedure 56 ......................................................15, 18

Federal Rule of Civil Procedure 56(a)...................................................15, 24

Federal Rule of Civil Procedure 56(b)........................................................24

Federal Rule of Civil Procedure 56(c)........................................................18

**OTHER AUTHORITIES**

William W. Palmer, *Proposed Unfair Claims Regulations,*
    36 Santa Clara L. Rev. 687 (1996) .......................................................24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   GENERAL'S INTRODUCTORY STATEMENT

This motion addresses insurance coverage disputes between Plaintiff Vahe Khachunts and General Insurance Company of America ("General") arising from a first-party insurance claim (relating to property damage that happened during a burglary), specifically: (1) a dispute over General's proposed repair for two chipped kitchen tiles (as discussed in Plaintiff's Complaint); and (2) Plaintiff's demand for withheld depreciation taken on already-paid personal property benefits (which demand is not discussed in the Complaint).   At bottom, the undisputed facts demonstrate that General's proposed repair for these two damaged tiles is proper. Further, Plaintiff's demand for withheld depreciation on its paid-out contents claim is neither pled in the operative complaint, nor supported by evidence produced by Plaintiff.

First, Plaintiff's demand for General to pay for the complete replacement of roughly 925 square feet of all first-floor tiles because two of the tiles in the kitchen were allegedly chipped during the burglary is unreasonable and unwarranted by either the express terms of the Policy or the insurance regulations applicable to this loss.   The clear and explicit terms of Plaintiff's insurance policy obligate General to repair "that part of the damaged building" that sustained "actual direct physical loss," with such repair to be done with materials of "like kind and quality." Nowhere does the policy require a perfect match.   The California Fair Claims Settlement Practices Regulations ("Claims Regulations") confirms this conclusion. Specifically, Section 2695.9(a)(2) authorizes General to make repairs so long as they result in a "reasonably uniform appearance."   In other words, nothing in the policy or Claim Regulations supports Plaintiff's demand, and General has paid all policy benefits due, which eliminates Plaintiff's claim altogether.

As for Plaintiff's demand for withheld depreciation on the contents portion of his insurance claim, such demand is baseless.   First, this demand is not articulated

in Plaintiff's operative pleading, the Complaint.  Second, General paid Plaintiff the actual cash value ("ACV") of the property Plaintiff contends was stolen.  To obtain reimbursement equal to replacement cost value ("RCV"), Plaintiff must present proof within 180 days of the loss (in the form of itemized receipts) that he has actually replaced the stolen items.  No such proof has been provided to General. Plaintiff has now missed the 180-day window, so any such claims are barred.

Given the foregoing, it follows that Plaintiff's breach of contract and bad faith causes of action fail, and summary judgment should be granted in favor of General.   Alternatively, General is entitled to partial summary judgment on Plaintiff's bad faith and punitive damages claims.  With respect to his bad faith cause of action, at a minimum there exists a "genuine dispute" of coverage as to the tile repair and the not-even-pled withheld depreciation issues.  It follows that Plaintiff cannot meet the high standard for a punitive damages claim as well.

## II.   PLAINTIFF'S INTRODUCTORY STATEMENT

General could not possibly be entitled to summary judgement in this case because it would require the court to conclude that General has demonstrated by irrefutable facts that it has satisfied and paid all the benefits owed under the contract it maintained with Plaintiff. This is not the case.

By and through its Motion for Summary Judgment, General attempts to convince this Court that evidence of its payments to Plaintiff establishes that it did not breach the contract with Plaintiff, the covenant of good faith and fair dealing, and that it did not act with malice, oppression or fraud when responding to Plaintiff's claim for policy benefits as a result of damages sustained when a burglary and vandalism took place at Plaintiff's property. This is a completely false premise. What General fails to disclose is that the damage caused to Plaintiff's home was substantially greater than the amounts paid, and that General oppressively, maliciously and fraudulently refused to properly investigate, acquire, and accept

evidence that defined the true nature and extent of the Plaintiff's loss. General's conduct is the exact type of conduct that our laws provide protection for Plaintiff.

General ignores and omits evidence of how it purposefully and willfully disregarded facts and evidence that defined the nature and extent of the loss, and how it fraudulently and willfully manipulated material facts for the purpose of deceiving Plaintiff and depriving him of the true amount of the loss he had suffered which should have been covered under the respective insurance policy that Plaintiff paid monthly premiums for.

Plaintiff has also shown that General has refused and continues to refuse to pay for the full extent of the property damage caused by the burglary and vandalism. General's position on payment of these matters is not in accordance with the terms of the insurance contract or the laws and regulations governing how insurers are to deal with their insureds in the State of California. General's refusal to make payments owed and its continued mistreatment of Plaintiff has not only breached the terms of the insurance contract but acted unreasonably in doing so.

In short, the evidence in this case clearly demonstrates that General's conduct in responding to Plaintiff's claim was done in bad faith and entirely reprehensible in how it purposefully manipulated, misrepresented, and ignored the evidence. General attempted to misrepresent the truth for the purpose of avoiding the fact that this loss was much greater than what it was willing to pay and how General went about minimizing the severity of Plaintiff's loss.

As further discussed below in great depth, as of this date, neither General or any of their so-called consulting experts are willing or able to make repairs to Plaintiff's home in a manner in which would take the home back to its pre-loss condition, as required by California Fair Claims Settlement Practices Regulations § 2695, despite intentionally, maliciously, oppressively and fraudulently providing inaccurate reports to the contrary.

/ / /

### III.   **GENERAL'S STATEMENT OF FACTS**

####     A.     **The Burglary Claim**

This lawsuit arises from the burglary (the "Incident") of Plaintiff's home in Sherman Oaks, California (the "Residence").   Joint Appendix of Facts ("JAF") 1. In particular, Plaintiff reported that the burglars stole significant quantities of designer goods (e.g., Gucci and Versace luxury items), and, as most relevant here, chipped two tiles in his first-floor kitchen.   JAF 2-3.




Figure 1 - Chipped Tile No. 1                    Figure 2 - Chipped Tile No. 2

*See* JAF 2.   Plaintiff reported the Incident to General and sought coverage under homeowners policy number OY7997387 for the period June 8, 2021 to June 8, 2022 (the "Policy").   JAF 4.

####     B.     **Relevant Policy Provisions**

The Policy applies to the Residence.   JAF 5.   Under Section I – Building Property We Cover – Coverage A, the Policy applies to "the dwelling on the residence premises… [and] materials and supplies located on or next to the residence premises used to construct, alter or repair the dwelling or other structures on the residence premises."   JAF 6.   Under Section I – Building Property Losses We Cover, the Policy further specifies that Coverage A applies to "accidental direct physical loss to property described in Building Property We Cover except as limited or excluded."   JAF 7.

Under Section I – Personal Property We Cover – Coverage C, the Policy applies to "[p]ersonal property owned or used by any insured […] while it is anywhere in the world."   JAF 8.   Under Section I – Personal Property Losses We

Cover, the Policy specifies it covers the peril of "[t]heft, including attempted theft and loss of property from a known location when it is likely that the property has been stolen."  JAF 9.

Under Section I – Property Conditions (the "loss settlement clause"), the Policy includes Replacement Cost coverage for Coverage A (dwelling), which means in relevant part "the replacement cost of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss."  JAF 10.  The Policy also includes Personal Property Replacement Cost Coverage which covers the "replacement cost" of Plaintiff's personal property.  JAF 11.  However, the Conditions section of the endorsement specifies that Plaintiff "may make a claim for loss on an actual cash value basis and then make a claim, within 180 days after the loss, for any additional liability under replacement cost, after you have repaired or replaced the property."  JAF 12.

Under the Definitions section of the Policy, the term "replacement cost" with respect to Coverage A (dwelling) means "the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation."  JAF 13.  With respect to Coverage C (personal property), "replacement cost" means "the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen."  JAF 14.

C.    **General Paid Repair Costs for the Chipped Tiles**

General inspected the damage to Plaintiff's home and determined that two chipped tiles in the kitchen could be repaired by replacing them with like or similar tiles.  JAF 15.  General paid Plaintiff for building repairs inclusive of this proposed tile repair.  JAF 16.  Plaintiff disagreed that the tile floors could be repaired, and took the position that "[r]eplacing the tiles with different tiles is ***not acceptable under any condition***." (Emphasis added.)  JAF 17.  To that end, Plaintiff has provided General with estimates from CalStar Restoration and the Croisdale Group

for the complete replacement of his tile floors – roughly 925 square feet (923.97 specifically) – due to the damage to less than one square foot of floor tile.  JAF 18.

General thus retained Blake Services, Inc. ("Blake Services") as a flooring consultant to evaluate if a repair could achieve a reasonably uniform appearance with the rest of the first floor of the Residence.  JAF 19.  Blake Services thereafter inspected the tile floors three times, and at Plaintiff's request, located a virtually identical tile at Daltile (see photos immediately below).  Such tile could be used to replace the two damaged tiles.  JAF 20-21.

 

Figure 3 - Proposed Repair Tiles          Figure 4 - Proposed Repair Tiles

To achieve as exact a match as possible, Blake Services proposed saw cutting existing tiles from beneath Plaintiff's cabinets or appliances to replace the chipped tiles, and then using the similar-looking tiles to replace the ones taken from beneath the cabinets, where they would never be seen.  JAF 22.  That said, where the proposed repair tiles are virtually identical (and in fact, so close in appearance that one was accidentally left by Blake Services at the inspection), Blake can simply replace the damaged tiles with the Daltile replacements.  *See* JAF 21-22.

General agreed with Blake Services' approach, and advised Plaintiff that Blake Services' proposed repair (whether removing tiles from beneath a cabinet or appliance or simply replacing the damaged tiles with the new tiles from Daltile) would provide for a "reasonably uniform appearance," consistent with the Policy and in conformity with the Claims Regulations.  JAF 23.  In response to Plaintiff's continued demands for a full replacement of tile throughout the entire first floor

(923.97 square feet), General sent a letter to Plaintiff further explaining that a full floor replacement was not owed because (1) the undamaged areas did not sustain "an accidental direct physical loss" as required by the Policy, and (2) Blake Services advised that a repair would conform to a "reasonably uniform appearance" as required by Section 2695.9(a)(2).  JAF 24.

Of particular note, Plaintiff's own flooring contractor's inspection revealed an inconsistent herringbone pattern as well as mismatched grout in the kitchen, such that the repair proposed by Blake Services actually would result in a *better* appearance:

 

Figure 5 - Tiles on left side of island are horizontal      Figure 6 - Mismatching grout in the kitchen

JAF 25.

General's payments to Plaintiff reflect the Blake Services' proposed tile repair approach.  JAF 26.  To date, Plaintiff has not completed any repairs to the Residence in connection with General's paid-for repairs.  Laura Curtis Declaration, ¶ 9.  General does not dispute that additional living expenses will be owed to the extent Plaintiff completes the repairs at issue paid-for by General.  Declaration of Laura Curtis, ¶ 12.

### D.      General Paid Amounts Owed for Plaintiff's Stolen Contents

In addition to dwelling repairs, Plaintiff also submitted a claim for stolen personal property.  JAF 3.  Based on Plaintiff's itemized list of this stolen property, General issued an ACV payment of $98,210.12 in April 2022 to Plaintiff. JAF 27.  General explained that Plaintiff was entitled to recover an additional $59,375.02

(representing the difference between the replacement cost value (RCV) and the ACV already paid [the "RCV Holdback"]) if Plaintiff actually replaced the stolen property.  JAF 28.  Such benefits would be due only if the property was replaced within 180 days of the burglary, supported by receipts showing that he actually replaced the property.  JAF 12.

Absent from Plaintiff's February 28, 2023 initial disclosures is any mention of the RCV Holdback as an item of recoverable damages.  JAF 29.  Plaintiff's March 28, 2023 initial document disclosures do not include any documents related to the contents claim.  JAF 30.  Plaintiff's interrogatory responses similarly make no mention of the RCV Holdback as an item of damages.  JAF 31.  In response to specific requests regarding support for his RCV Holdback claim, as of the date General provided its Joint Brief to Plaintiff, Plaintiff has not produced any receipts.  JAF 32.  Finally, at his deposition in August 2023, Plaintiff acknowledged that General instructed him to provide receipts to obtain reimbursement for recoverable RCV Holdback, but Plaintiff advised he had not provided any such receipts to date, i.e., nearly a year and half after General issued the ACV payment for his stolen property.  JAF 33.

### E.    Plaintiff's Operative Complaint

Plaintiff filed his original and operative Complaint in this lawsuit on November 17, 2022 ("Lawsuit").  JAF 34.  In his Complaint, Plaintiff asserts causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing ("bad faith"), with Plaintiff further generally alleging entitlement to punitive damages.  JAF 35.

In his complaint, Plaintiff's allegations exclusively concern the tile floors in the downstairs area of his home, without mentioning a contents loss.  JAF 36.  For example, Plaintiff alleges that the burglary "caused significant property damage to PLAINTIFF'S PROPERTY, including the tile flooring of the property," and that the "flooring that Blake Services [*sic*] was not one that would be considered

reasonable [*sic*] uniform in appearance with the tile PLAINTIFF had installed in his PROPERTY […].” JAF 37-38. Plaintiff also alleges that the damaged tiles in the kitchen area cannot be repaired to achieve a “reasonably uniform appearance.” JAF 39. The operative pleading omits allegations concerning the personal property portion of Plaintiff’s claim and is devoid of any allegation that Plaintiff is entitled to recover any additional policy benefits relating to his stolen property. JAF 40.

## IV. PLAINTIFF’S STATEMENT OF FACTS

### A. The Incident.

On or about August 27, 2021, a burglary and vandalism occurred at Plaintiff’s residence located at 13416 Chandler Boulevard, Sherman Oaks, California 91401. (*A true and correct copy of Plaintiff’s Complaint has been attached as **Exhibit A** to the Declaration of Zareh Jack Keosian See ¶ 2.*) Plaintiff held a homeowner’s insurance policy with General corresponding to Policy Number OY7997387. (*A true and correct copy of Vahe Khachunts [“Khachunts Decl.”] Declaration has been filed herewith; See ¶ 3.*) The policy was in full force and effect at the time of the incident and included coverage for Plaintiff’s residence. (*JAF 44.*) The next day following the burglary, Plaintiff timely reported the incident to General and opened an insurance claim. (*JAF 45.*) Plaintiff noticed that there was damage to the floor tiles in the kitchen and also reported the damage to General. (*JAF 46.*)

In an effort to mitigate the extent of the damages incurred, Plaintiff engaged the services of Calstar Restoration, a restoration company, to conduct a comprehensive assessment of the damage inflicted upon his residence, including on the compromised tiles. (*JAF 47.*) Calstar Restoration indicated that the only viable resolution was to replace all the tiles on the first floor because it would not be possible to establish a reasonable uniform appearance in Plaintiff’s home with a repair. (*JAF 48.*) Calstar Restoration conducted a dwelling inspection of Plaintiff’s home and provided a written estimate of their findings. (*JAF 49.*) The total estimate for repairs was $176,078.76. (*Id.*)

Plaintiff himself, and through his counsel, provided General with readily available information and documents reasonably necessary for and requested by General to evaluate the claim and disburse prompt payments owed to Plaintiff. This includes, but is not necessarily limited to: fully complying and cooperating with General's requests; prompt access to General for the numerous inspections of the subject property upon request; Plaintiff submitted information and documents as they were obtained, that detailed losses to the dwelling, stolen personal property, and related expenses, that included supporting documentation in the form of estimates, quotes, consultant reports and analyses, photographs, invoices, and itemizations.

Defendant, in bad faith, paid for only part of the claim and intentionally elected not to conduct a proper investigation of the claim to ascertain the facts and full extent of the damages unreasonably and/or without proper cause, in breach of the terms of the subject policy and the implied covenant of good faith and fair dealing. This conduct was also in violation of one or more statutory provisions under the California Insurance Code and California Code of Regulations – *see*, for example, Insurance Code, section 790.03(h)(5); California Code of Regulations, Title 10, sections 2695, *et seq*. This bad faith / breach of the implied covenant of good faith and fair dealing includes, but is not necessarily limited to, the following:

**B.    General's Inadequate Investigation.**

General performed an inadequate investigation and unreasonably, knowingly, deceptively, and most importantly, fraudulently "relied" on the false opinions or recommendations of unqualified and untruthful consultants regarding the methods of repair, in an effort to pay Plaintiff less money than what he was entitled under the policy. This malicious, oppressive and fraudulent conduct caused unreasonable delays in the processing of Plaintiff's claim. General failed to properly and fairly investigate Plaintiff's claim, specifically with regard to the damaged tile under the dwelling portion of his policy. (*A true and correct copy of Maribeth Danko's*

*["Danko Decl."] Declaration has been filed herewith; See ¶ 18; JAF 50.*) General's failures led to serious, unreasonable, unfair, and extensive delays in calculating and paying Plaintiff's claim. (*JAF 51.*)

General engaged the services of Blake Services, Inc. to inspect Plaintiff's residence. (*Khachunts Decl. ¶ 14.*) An individual who presented himself as Zane Street from Blake Services came to Plaintiff's home on or about March 10, 2022, April 7, 2022, and May 10, 2022. (*Id.*) With him was a Ralph Padilla from Blake Services, however, Mr. Street was doing most of the talking, inspecting and photographing during all the inspections. (*Id.*)

Mr. Street brought sample tiles to Plaintiff's home to see if they would match or at least create a reasonable uniform appearance. (*JAF 52.*) The tiles he brought did not match nor did they create a reasonable uniform appearance because the difference in tiles was easily able to be seen. (*JAF 53.*)

Mr. Street's proposal involved extracting tiles from beneath the refrigerator and substituting damaged tiles with these reclaimed ones, albeit with the inclusion of a different colored tile beneath the refrigerator. (*Khachunts Decl. ¶ 16.*) Notably, and as mentioned above, the sample tiles provided by Mr. Street and Blake Services bore no resemblance to the existing tile flooring in Plaintiff's residence, rendering such a replacement noticeable due to the comparison of different colors, especially the lack of wood grain brown colors within the tile. (*JAF 54.*)

Ms. Danko, an expert and consultant on claims handling customs, practices, industry standards, and procedures involving claims adjusting and claim handling of property insurance and automobile insurance claim references some of the questionable and speculative conclusions reached by General. For example, Ms. Danko declares that General failed to properly investigate Plaintiff's claim for tile coverage, and improperly delayed and reduced policy benefits without cause. (*JAF 55.*) General ignored Plaintiff's own contractor estimate, then attempted to force non-standard "repairs" which led to extensive delays. (*JAF 56.*) General also

communicated in ways that were deceptive, misleading, false, and non-transparent. (*Danko Decl. ¶ 37.*) Many of General's claim handling behaviors are red flag indicators of misleading, oppressive, and punitive actions in the claim handling process. (*Id.*)

## C. General's Unqualified Experts.

General has knowingly "relied" on the opinions of improper experts who lack the expertise, training, or qualifications to render those opinions in their delay and failure to pay the entirety of Plaintiff's claim. For example, during Mr. Brett Allen's – a large loss adjuster for General – recent deposition, the following dialogue transpired:

> By Mr. Keosian: Did anybody from Zane -- did anybody from Blake Services such as Zane Street or Jill ever advise you that they can repair that one broken tile?
> Mr. Meli: Objection. Vague and ambiguous. Lacks foundation. Calls for speculation.
> The Witness: Like repair the divot in the tile?
> By Mr. Keosian: Correct.
> A: No.

(*A true and correct copy of relevant portions of Brett Allen's deposition transcript has been attached as Exhibit B to the Declaration of Zareh Keosian. See Ex. B, p. 44:11-20; Keosian Decl. ¶ 3; JAF 57.*)

> By Mr. Keosian: But did you ask Blake Services hey, if you fully found a reasonably matching tile, why don't you just install it in place of the broken tiles?
> A: I relied on the -- I relied on the advice of the employee vendor.
> Q: And that's Zane Street, correct?
> A: Zane Street, Blake Services.

(*See Ex. B to Keosian Decl. p. 82:17-23.*)

Furthermore, during Mr. Zane Street's deposition, Mr. Street testified as follows:

> By Mr. Keosian: At any point were you having difficulties locating tiles that would match the tile that was in Plaintiff's property?
> A: At any point was I having difficulty? I mean, it's always a challenge. I don't recall being one way or the other. I couldn't find a matching tile exactly, no.
> Q. Until this day you haven't found one that matches, correct?

A. I ceased looking a long time ago.

Q. But that doesn't answer my question. Have you found a tile that –

A. No, I have not found one.

(*A true and correct copy of relevant portions of Zane Street's deposition transcript has been attached as Exhibit F to the Declaration of Zareh Keosian. See Ex. F, p. 40:20-25; 41:1-7; Keosian Decl. ¶ 10; JAF 58.*)

### D.     Unpaid and/or Untimely Paid Claim.

To date, General has failed to pay the entirety of Plaintiff's claim resulting from the burglary and vandalism. Although General was presented with evidence of the extent of the damage related to this loss, General intentionally chose not to adequately consider such information and evidence, and did not reasonably adjust the claim. Moreover, General has yet to provide full compensation for the stolen items taken from Plaintiff's residence. (*JAF 59.*) General alleges that Plaintiff has not submitted a single receipt supporting entitlement to the RCV Holdback. However, General fails to acknowledge that Plaintiff has refrained from replacing the stolen items out of concern that the funds allocated by General for their replacement may ultimately be required to address the complete restoration of his flooring, especially if General persists in denying full settlement of the claim. (*JAF 60.*) Plaintiff's apprehension centers around the prospect of replacing personal property only to find himself financially constrained and incapable of covering the expenses associated with repairing the tile flooring. (*Khachunts Decl. ¶ 20.*)

### E.     General's Despicable Pattern and Practice.

General has delayed and failed to pay the entirety of Plaintiff's claim and resolve the matter, demonstrating an intentional, bad faith, and unlawful pattern and practice to unjustly and unreasonably deny insurance claims. General sold an insurance policy to Plaintiff as protection for this exact sort of tragedy and Plaintiff purchased the insurance policy and faithfully paid premiums to protect himself. Although Plaintiff's insurance policy was intended to help him, instead, General exponentially compounded Plaintiff's suffering when he was at his most vulnerable

by hiring biased and unqualified consultants to prepare low estimates, and most critically, by intentionally delaying to ascertain the true amount of damages.

From the outset of this case, General has repeatedly delayed the resolution of Plaintiff's claim and has attempted to mischaracterize Plaintiff and the loss he has sustained.

### F.     Resultant Damages.

As a result of General's bad faith claims handling, Plaintiff has suffered economic and non-economic losses including, but not limited to: losses resulting from the failure to pay the entirety of the claim, plus interest; losses resulting from the failure to pay the claim in a timely manner; reasonable attorneys' fees and costs incurred to recover said losses; and emotional distress, pain and suffering. (*Khachunts Decl. ¶ ¶ 21-25.*)

### G.     Punitive Damages.

With its intentional delay tactics, failure to adequately inspect the subject property and failure to act in good faith in the interest of its insured, General acted with malice, oppression, and fraud. For reasons known only to General, General with its actions and failure to take proper and adequate actions, intended to cause Plaintiff harm and/or engaged in despicable conduct with a willful and conscious disregard for the rights of others, including Plaintiff.

General acted with deceit, intentionally misrepresented, and/or concealed material facts known to General, with the intent to deprive Plaintiff of his property, his legal rights, and/or otherwise cause him harm.

## V.   GENERAL'S LEGAL STANDARDS

General asks that this Court grant summary judgment, or alternatively, partial summary judgment based on the terms of the subject General Policy, as well as the pertinent Claims Regulations, specifically Section 2695.9(a)(2), which requires that insurers make repairs so that they are "reasonably uniform in appearance."   The

legal standards for this motion and interpretation of the Policy and Regulation are set forth below.

### A.    Summary Judgment

Federal Rule of Civil Procedure 56 is an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  One of the principal purposes of summary judgment is to dispose of factually unsupported claims or defenses.  *Id.* at 325.

Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex*, 477 U.S. at 322.  Rule 56 also allows a court to grant partial summary judgment as to a particular claim.  Fed.R.Civ.P. 56(a); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed.R.Civ.P. 56(a); *State of Cal. ex rel. Cal. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

 The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can meet its burden by (1) producing affirmative evidence negating an essential element the nonmovant's claim, or (2) after suitable discovery, demonstrating that the nonmovant is unable to produce sufficient evidence of an essential element of its claim to prevail at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F. 3d 1099, 1106 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of fact exists.  *Anderson*, 477 U.S.

at 256.  The nonmovant, however, cannot rely on mere speculation or guess work to overcome summary judgment – it is required to produce evidence.  *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F. 3d 825, 829 (9th Cir. 2001).  The nonmovant cannot rest on the allegations in its pleadings.  *Celotex*, 477 U.S. at 321 fn. 3.  Likewise, it cannot simply rely on testimony that is conclusory, speculative, or uncorroborated and self-serving to raise a genuine issue of fact and defeat summary judgment.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054, 1061 (9th Cir. 2002).  "This is burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle Corp. Sec. Litig.*, 627 F. 3d 376, 387 (9th Cir. 2010).

## B.   Insurance Policy Interpretation

California law governs interpretation of an insurance policy in a diversity action like the case at bar.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336, 338 (9th Cir. 1996).  Under California law, interpretation of an insurance policy presents a legal question for the Court to resolve, and one that is particularly well-suited for summary judgment.  *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995).  "Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts."  *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995).  Insurance policy provisions are to be interpreted in their "ordinary and popular sense."  *Id.*; Cal. Civil Code § 1644.  The insurance policy must be considered as a whole, with the language interpreted in context, rather than in isolation.  Cal. Civ. Code § 1641; *Am. Alternative Ins. Corp. v. Super. Ct.*, 135 Cal. App. 4th 1239, 1245 (2006).

"An insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected."  *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086 (1998); Cal. Civ. Code § 1636.  Accordingly, if the "contractual language is clear and explicit, it governs."  *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (2010);

Cal. Civ. Code § 1638. Finally, where a policy term has been "judicially construed" in a "sufficiently analogous context," the term is "not ambiguous." *McMillin Homes Constr., Inc. v. Natl. Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1053 (2019), review denied (Aug. 28, 2019).

Based on the plain language of the Policy applied to the undisputed facts, General paid all of the policy benefits it owed to Plaintiff.

### C.   Standards Regarding Regulatory Interpretation

Like contract and policy interpretation, statutory and regulatory interpretation is a question of law. *Suman v. BMW of North America, Inc.*, 23 Cal. App. 4th 1, 9 (1994); *Bates v. Poway Unified School Dist.*, 83 Cal. App. 5th 907, 920-21 (2022).

Statutory interpretation involves a three-step analysis by the court, applied in the following order: (1) first examine the actual language of the statute; (2) if the meaning of the words is not clear, the court must refer to extrinsic evidence of intent, including legislative history; and (3) if the first two steps have failed to reveal the clear meaning of the statute, the court should apply reason, practicality, and common sense to the language at hand. *Hoechst Celanese Corp. v. Franchise Tax Bd.*, 25 Cal. 4th 508, 519 (2001); *Herman v. Los Angeles County Metro. Transp. Auth.*, 71 Cal. App. 4th 819, 825-26 (1999); *Halberts Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1238-39 (1992). Regulatory interpretation follows the same steps, with the only primary difference being that courts "defer to an agency's interpretation of a regulation involving its area of expertise…unless the interpretation flies in the face of the clear language and purpose of the... provision." *Bates*, 83 Cal. App. 5th at 920–21.

Here, the plain meaning of the Claims Regulation at issue, Section 2695.9(a)(2), is clear. Nonetheless, this Section's regulatory intent (and common sense) dictate that complete replacement of all first floor tile based on two chipped kitchen tiles is unnecessary to achieve a "reasonably uniform appearance."

## VI.   PLAINTIFF'S LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). The burden of establishing that there are no genuine issues of material facts is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330-331 (1986). The court in *Celotex* stated: "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production. [Citations omitted]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330-331 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-161 (1970).

The burden of persuasion imposed on a moving party by Rule 56 is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330-331 (1986). Summary judgment should not be granted unless it is clear that a trial is unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970).

The moving party must provide evidence sufficient to shift the burden to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330-331 (1986). If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the Court need not consider whether the moving party has met its ultimate burden of persuasion. *Celotex Corp.*, 477 U.S. at 332.

Here, General has failed to present evidence that there are no genuine issues of material fact in order to meet its burden of production.

## VII.  **GENERAL'S ARGUMENT: SUMMARY JUDGMENT FOR GENERAL IS PROPER**

Under California law, the elements of a breach of contract claim include: (1) the existence of a contract; (2) the plaintiff's performance or non-performance under the contract; (3) the defendant's breach; and (4) damage sustained by the plaintiff as a result of the breach.  *Reichart v. Gen. Ins. Co. of Amer.*, 68 Cal. 2d 822, 830 (1968); *Harmoush v. Allstate Ins. Co.*, No. CV 10-4664-GW(VBKx), 2012 WL 13005560 (C.D. Cal., Feb. 6, 2012).  Where a plaintiff claims breach of an insurance policy, it must show that it sustained damages because the insurer improperly withheld benefits.  *Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th 1446, 1449 (1998).

To establish bad faith under California law, Plaintiff must show: (1) benefits under the Policy were withheld; and (2) withholding the benefits was unreasonable. *Guebara v. Allstate Ins. Co.*, 237 F. 3d 987, 992 (9th Cir. 2001).

Plaintiff's breach of contract and bad faith causes of action fail as a matter of law because General did not breach the terms and conditions of the Policy by withholding benefits.  First, the express terms of the Policy and the Claims Regulations do not require a full tile floor replacement.  Second, Plaintiff has not pled or otherwise produced admissible evidence that he is entitled to recover the difference between RCV and ACV on personal property he never actually replaced.  Third, because Plaintiff cannot establish that General withheld benefits otherwise due under the Policy, his bad faith claim (and corresponding demand for punitive damages) necessarily fails.  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) (bad faith claim cannot be maintained unless policy benefits are due); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Amer.*, 15 F. 4th 885, 893 (9th Cir. 2021) (same).  Accordingly, summary judgment in favor of General is appropriate.

/ / /

/ / /

### A.   Under the Clear and Explicit Terms of the Policy, General's Proposed Repair for the Chipped Kitchen Tiles Is Proper

The Policy applies to "accidental direct physical loss" to the Residence.  JAF 5-7.  Under the loss settlement clause, the Policy further specifies that General must pay for "the replacement cost of *that part of the damaged building* for *equivalent construction* and use on the same premises as determined shortly following the loss." (Emphasis added.)  JAF 10.  The Policy then defines "replacement cost" to mean in relevant part the "cost […] to repair or replace the damaged property with new materials of *like kind and quality*, without deduction for depreciation."  JAF 13.

The plain meaning of the Policy requires General to pay for repairs to damaged areas, but such repairs do not need to perfectly match the original construction.  Instead, the Policy requires General to pay for repairs to the *area at issue* with "new materials of like kind and quality."  JAF 7 and 13.  As noted by one California court, the purpose of first party insurance (i.e., insurance providing direct benefits to the homeowner) "[is] to compensate for the actual loss sustained, not to place the insured in a better position than he or she was before the [loss]." *McCorkle v. State Farm Ins. Co.*, 221 Cal. App. 3d 610, 614 (1990) (finding that insurer not required to replace wood floor with cement floor as required by updated building codes, but rather, to pay for the cost to replace wood floor).

Other courts interpreting similar loss settlement provisions have found that the type of repair demanded by Plaintiff is simply not warranted by the terms of the policy.  In *Greene v. United Services Auto. Ass'n*, 936 A.2d 1178, 1186 (Sup. Ct. Pa. 2007), the Superior Court of Pennsylvania considered the meaning of "damaged part of the property" in a substantially similar homeowners policy.  There, the court held that an insurer satisfied its obligation to pay for repairs or replacement with like construction by using shingles similar to the damaged shingles in function, color and shape.  *Id.*  The court rejected the argument that the insurer was required to replace the insured's entire roof where only a small portion had been damaged

because identical shingles were no longer available.  The court explained that the phrase "damaged part of the property" in the policy is unambiguous, and characterized the insured's "interpretation … [as] unreasonable and absurd." *Id.* at 1186.  *See also*, *Woods Apts., LLC v. U.S. Fire Ins. Co.*, No. 3:11-CV-00041-H, 2013 WL 3929706 (W.D. Ky., Jul. 29, 2013) ("The Policy's replacement coverage provision states that Defendants must pay the cost of replacing the damaged property with comparable material and quality relative to the undamaged portions…Essentially, if Defendants can repair the damaged area with comparable or similar material, the Policy provides that they are not obligated to replace undamaged portions.").

Here, Plaintiff sought coverage for the Incident under the Policy and alleges he is entitled to recover the full replacement cost for his tile floors.  JAF 1-4, 34-36.  General, however, located a replacement tile of virtually identical style and quality to Plaintiff's existing floor tiles.  JAF 21.  Plaintiff's position it will not accept different tiles "under any condition" does not comport with the plain language of the Policy.  JAF 17.  The Policy's loss settlement provision only requires General to compensate Plaintiff for the actual loss sustained.  JAF 10.  This translates to General only being required to pay to repair the two chipped tiles (i.e. "that part of the damaged building"), not to replace all tiles on the first floor.  *See id.*

Given the Policy's clear language, summary judgment should be granted in General's favor for this reason alone.

**B.    The Claims Regulations Support that General is not Required to Pay for a Full Floor Replacement Because of Two Chipped Tiles**

**1.   "Reasonably Uniform Appearance" Plainly Does Not Mean Perfect Match**

The Claims Regulations, which were promulgated to "delineate certain minimum standards for the settlement of claims," work in harmony with the language of the Policy.   10 C.C.R.  § 2695.1(a)(1).   In particular, Section

2695.9(a)(2) of the Claims Regulations only require repairs to provide a "reasonably uniform appearance," not a perfect match:

> (a) When a residential or commercial property insurance policy provides for the adjustment and settlement of first party losses based on replacement cost, the following standards apply:
>
> […]
>
> (2)   When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace all items in the damaged area so as to conform to a reasonably uniform appearance.

Similar to the rules of contract interpretation, the interpretation of an administrative regulation (like a statute) is a question of law for the court. *State Farm General Ins. Co. v. Lara*, 71 Cal. App. 5th 148, 168 (2021). When interpreting a regulation, a court must look first to the words of the regulation and apply their usual, ordinary meaning. *Id.* at 167. If the language is clear and unambiguous, then further evaluation of the intent or meaning of a regulation is unnecessary. *Id.* at 168. At least one California court has found that Section 2695.9(a)(2) unambiguously does not require a perfect match.

In *Lyons v. Wawanesa Gen. Ins. Co.*, Nos. E044086, E045236, 2009 WL 1077294 (Cal. Ct. App., April 22, 2009),[1] the court considered whether an insurer acted in bad faith when it declined to pay to replace undamaged stucco and windows on its insured's residence because Section 2695.9(a)(2) only required it to "replace all items *in the damaged area* so as to conform to *a reasonably uniform appearance*." *Id.* at *5 (emphasis original). In finding that a "genuine dispute" existed between the insurer and insured (eliminating bad faith), the court correctly interpreted the

---

[1] A federal court may properly consider unpublished state court decisions. *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F. 3d 1215, fn. 8 (9th Cir. 2003).

regulation to mean that "*[a] perfect match was not required*." *Id*. (Emphasis added.)

Courts in other jurisdictions agree that similar "matching" regulations are clear and unambiguous and do not require the replacement of non-adjacent, and undamaged areas of an insured's property.  For example, in *Kamansky v. Liberty Mutual Ins. Co.*, No. HHDCV186094809S, 2019 WL 2374343 (Sup. Ct. Conn., April 30, 2019), the court interpreted Conn. Gen. Stat. § 38a-316e(a), which requires that when "replacement item or items do not match adjacent items in quality, color or size, the insurer shall replace all such items with material of like kind and quality so as to conform to a reasonably uniform appearance." There, the court concluded the insurer was required to replace only the siding on one side of its insured's home, not all four sides.  Notably, the court rejected the insured's argument that the matching regulation required its insurer "to replace all the items, adjacent and not, so as to create a uniform appearance." *Id.* at *4-5.

Here, Section 2695.9(a)(2) unambiguously states that an insurer is only required to make repairs to the "damaged area" so that the repairs conform to a "reasonably uniform appearance" to undamaged tiles in the area.  "Damaged area" does not mean all areas, and "reasonably uniform" does not mean perfect match.  Nevertheless, Plaintiff has taken the position that anything absent a perfect match does not constitute "reasonably uniform appearance."  Such position does not comport with the express language of the Claim Regulation at issue and would instead result in a windfall to which Plaintiff is not entitled.

## 2.   The Regulatory History Behind Section 2695.9(a)(2) Comports with this Section's Clear Language

Further, while Section 2695.9(a)(2) is clear as to what it says, a review of the regulatory intent bolsters General's position.  As discussed by the former Deputy Commissioner and General Counsel for the California Department of Insurance, William W. Palmer, the "reasonably uniform appearance" standard replaced the

prior standard requiring insurers to pay for repairs within a "clear line of vision" from the damaged area. *See* William W. Palmer, *Proposed Unfair Claims Regulations,* 36 Santa Clara L. Rev. 687, 695 (1996) (hereinafter, "Palmer"). Palmer noted that the prior standard often led to unjust enrichment for certain claimants, since a "clear line of vision" is a subjective and difficult standard to determine. (Palmer at p. 713.)

Based on the highly subjective nature of the prior standard, Section 2695.9(a)(2) was modified to only require a repair that creates a "reasonably uniform appearance" in the impacted area. As the *Lyons* court recognized, this standard does not require a perfect match.

Given the clear language of the Policy and Section 2695.9(a)(2), a commonsense approach to the tile repair at issue here would favor the repair recommended by Blake Services, whether it uses tiles from beneath the cabinets/appliances or uses the nearly identical tiles found at Daltile. Such repair would address the chipped tiles, and result in a reasonably uniform appearance in the impacted area. The alternative repair proposed by Plaintiff – i.e., complete replacement of *all* first floor tile – would result in exactly the type of windfall meant to be addressed by the change in the Claim Regulations. Thus, General should not be found in breach of the Policy based on its proposal to repair the tiles.

**C.** **Where Plaintiff has Not Pled or Supported His Demand for Contents Depreciation, Such Demand Should Not Be Considered, or Provide a Basis for Plaintiff's Breach of Contract Claim**

**1.** **Plaintiff Cannot Recover for Contents Depreciation When These "Damages" Were Never Pled**

A court properly grants summary judgment upon a showing that there is no genuine issue of material fact as to a particular claim or defense. Fed. R. Civ. P. 56(a), (b). "The 'materiality' of particular facts is determined by the pleadings." Schwarzer, Tashima, et al.; FED. CIV. PROC. BEFORE TRIAL (2014) § 14:27.1, at 14-11. "While a summary judgment motion does go beyond the pleadings in the sense

1  that it tests the sufficiency of the evidence to support the allegations of the complaint,

2  those allegations still serve to frame—and limit—the issues." *Fox v. Good*

3  *Samaritan L.P.*, 801 F.Supp.2d 883, 896 (N.D. Cal. 2010), aff'd sub nom.  *Fox v.*

4  *Good Samaritan Hosp. LP*, 467 F. Appx. 731 (9th Cir. 2012).  Because "summary

5  judgment is not a procedural second chance to flesh out inadequate pleadings,"

6  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006),

7  courts will not grant or deny summary judgment based on unpled theories or claims.

8  *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1079-80 (9th Cir. 2008); *see*

9  *Wasco Prods., Inc.*, 435 F.3d at 992 ("Simply put, summary judgment is not a

10  procedural second chance to flesh out inadequate pleadings.")

11      Here, Plaintiff's Complaint only addresses the tile repair issue.  JAF 34-40.

12  For example, Plaintiff alleges that the burglary "caused significant property damage

13  to PLAINTIFF'S PROPERTY, including the tile flooring of the property," and that

14  the "flooring that Blake Services [*sic*] was not one that would be considered

15  reasonable [*sic*] uniform in appearance with the tile PLAINTIFF had installed in his

16  PROPERTY […]."  JAF 37-38.  Plaintiff also spends considerable time on his email

17  communications with General addressing whether a repair of the two damaged tiles

18  in his kitchen can achieve a "reasonably uniform appearance" with the undamaged

19  tiles in the area.  JAF 36.  Significantly, the operative pleading omits allegations

20  concerning Plaintiff's personal property claim, and it is devoid of any allegation

21  that Plaintiff is entitled to recover the RCV Holdback on his stolen property for

22  which General has already paid $98,210.12.  JAF 40.  Plaintiff also neglected to

23  identify any damages concerning this claim in his initial disclosures and discovery

24  responses.    JAF 29-32.    The only damages identified relate to Plaintiff's

25  unreasonable position that General must replace the entire tile floor because of two

26  chipped tiles. *Id*.

27  / / /

28  / / /

As demonstrated above, Plaintiff's breach of contract claim based on General's proposed tile repair is unsupported.  As the RCV Holdback issue is not even pled, such finding is enough to support summary judgment for General.

## 2. Plaintiff's Demand for RCV on his Contents Claim is Unsupported

What's more – even putting aside Plaintiff's inadequate Complaint – summary judgment in favor of General should still be granted because Plaintiff has not and cannot produce evidence demonstrating that he is entitled to recover the RCV Holdback on his stolen property.  *Nissan*, 2010 F. 3d at 1106 (if after suitable discovery the nonmovant is unable to produce sufficient evidence of an essential element of its claim, summary judgment in favor of the movant is proper).

In April 2022, General advised it was paying $98,210.12 to resolve Plaintiff's personal property claim.  JAF 27.  Based on the terms of the Policy, General explained that this amount constituted the ACV of Plaintiff's stolen property, and further instructed Plaintiff to submit receipts *once he replaced the stolen items to recover withheld depreciation up to $59,375.02.*  JAF 8-9, 11, 14, and 28.  To date, Plaintiff has not submitted a single receipt supporting entitlement to the RCV Holdback, despite General's express instructions to Plaintiff to do so.  JAF 33.  This includes General's request for production to Plaintiff asking that Plaintiff produce all receipts supporting such claim.  JAF 32.  Rather, Plaintiff acknowledged at his deposition in August 2023 that he has not provided any such receipts.  JAF 33.  Plaintiff has therefore failed to satisfy the 180 day time limitation in the Policy and has not even pled a claim for RCV Holdback.  JAF 12.  Accordingly, because Plaintiff's RCV holdback claim is unsupported, General requests that summary judgment be granted in its favor as to Plaintiff's breach of contract claim for this reason as well.

/ / /

/ / /

### D. Because There is no Breach of Contract, Plaintiff's Claim for Bad Faith Fails

As discussed above, Plaintiff's breach of contract claim fails as a matter of law. Thus, Plaintiff's claim for bad faith, which is dependent on a viable claim for breach of contract, necessarily fails as well. *Love*, *supra*, 221 Cal. App. 3d at 1151 (bad faith claim cannot be maintained unless policy benefits are due); *Mudpie, Inc.*, *supra*, 15 F. 4th at 893. Accordingly, summary judgment in favor of General is proper.

## VIII. PLAINTIFF'S OPPOSITION AS TO SUMMARY JUDGMENT

### A. There are Several Triable Issues of Material Fact as to Plaintiff's First Cause of Action For Breach of Contract.

"An insurance policy is a contract between an insurer and an insured . . . the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss." *Buss v. Superior Court*, 16 Cal.4th 35, 44 (1997) (citations omitted). "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interests above that of its insured." *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal.App.4th 1617, 1620 (1996).

If a plaintiff, in response to a defendant's summary judgment motion demonstrates the existence of a triable dispute with specific facts by making a prima facie showing of the merit of the complaint, the motion must be denied. Code Civ. Proc. § 437c(o)(2), *Mcintosh v. Mills*, 121 Cal.App.4th 333 (2004). As discussed hereinbelow, Plaintiff has demonstrated the existence of a triable dispute with specific facts making a prima facie showing that his complaint has merit.

A complaint for breach of contract must include the following: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance,

(3) defendant's breach, and (4) damages to plaintiff therefrom. *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal.App.3d 887, 913 (1971).

### 1. Existence of a Contract.

It is undisputed that there was a valid contract between Plaintiff and General.

### 2. Plaintiff's Performance.

Pursuant to the terms of Plaintiff's insurance policy, which is the written contract entered into between Plaintiff and General, Plaintiff was to make monthly premium payments, and in return for Plaintiff's consideration, General, in its capacity as an insurance company, was to provide coverage and benefits owing to Plaintiff for all covered losses. It is undisputed that Plaintiff performed his obligations under the contract by making monthly payments to General.

Plaintiff submitted all estimates to General immediately when it became available to him. However, General completely ignored the standard that insurance carriers must follow for prompt, fair, and equitable settlement. Specifically:

Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation and **shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute**. Cal. Code Regs. tit. 10 § 2695.7 (d).

General owed Plaintiff a duty to properly investigate and adjust the claim. General did not diligently pursue a thorough investigation, as is required. Instead, General hired Blake Street, Inc., who hired Mr. Street. During Mr. Street's deposition, he testified that he was not a tile expert but rather a wood flooring expert. (*JAF 61*.) Rather than hire a company that specialized in tile flooring, General improperly chose a hardwood flooring consultant. Furthermore, during Mr. Allen's deposition, the following transpired:

Q: Had you known that Zane Street's certificate is only for wood and not tile, would you still have called him for this specific claim where the issue was tile?
Mr. Meli: Objection. Incomplete hypothetical. It also lacks foundation. And it assumes facts.

The Witness: When I contacted Blake Services, I did not know who specifically they were going to dispatch.

By Mr. Keosian: Did Zane Street ever tell you that he was having difficulty locating a matching tile?

A: Actually, yes, he did originally.

(*See Ex. B to Keosian Decl. p. 122:13-24; JAF 62.*)

Not only did Mr. Allen testify that General was having difficulty locating a matching tile, but Mr. Allen's own claim note in General's Claim File states: "spoke to rep from Blake Services on Thursday, states that they are having a hard time finding the tile in the home." (*A true and correct copy of relevant portions of General's Claim File produced in its Initial Disclosures has been attached as Exhibit C to the Declaration of Zareh Jack Keosian, See ¶ 4; JAF 63.*)

### 3. General's Breach.

The insurance industry Standard of Care, as it applies to first party claims handling, requires compliance with California Fair Claims Settlement Practices Regulations and the California Insurance Code. Section 2695.9 requires that:

"When a loss requires replacement of items and the replaced items do not match in quality, color or size, ***the insurer shall replace all items in the damaged area so as to conform to a reasonably uniform appearance***." (§ 2695.9(a)(2)) (emphasis added.)

"…The estimate prepared by or for the insurer shall be in accordance with applicable policy provisions, ***of an amount which will restore the damaged property to no less than its condition prior to the loss***…" (§ 2695.9(d)). (emphasis added).

General ignored this and, contrary to Standard of Care, rather than allowing for replacement of tiles to conform to a reasonably uniform appearance and to restore the damaged property to no less than its condition prior to the loss, General required Plaintiff to damage one section of the kitchen in order to "repair" another. (*JAF 64.*) In this case, Standard of Care would require replacement of the entirety of the tiles. (*JAF 65.*)

/ / /

General breached the terms of the subject policy by underpaying and delaying payment of monies due under the policy and by forcing Plaintiff to institute this litigation. Specifically, General failed to pay Plaintiff for the damages caused by the burglary and vandalism which were necessary to take the property back to its pre-loss condition. When Plaintiff submitted estimates for the necessary repairs, General continued to deny making the requested and required payments.

Plaintiff's flooring specialist, Mr. Tim Howard, inspected Plaintiff's property on or about September 8, 2023 and on September 27, 2023. (*A true and correct copy of Tim Howard's ["Howard Decl."] Declaration has been filed herewith; See ¶ 5; JAF 66.*) It was found that the repair of the damaged tile with the use of an epoxy filler would not work due to the size of the damage to the tile and the pattern within the tile. (*JAF 67.*) An attempt to remove an existing tile from under the refrigerator and using that tile in place of the damaged tile would not work for 2 reasons: (1) removing an installed tile with thinset and mortar bed will most likely break and or chip the tile being removed; and (2) since the tile is installed in a herringbone pattern, obtaining a full tile will be impossible as all the tiles that are installed under the kitchen cabinets still have exposure in the kitchen area beyond the kitchen cabinet. (*JAF 68.*) If a tile is successfully removed intact, the replacement of that tile will have to be replaced with a tile that is not within a reasonable and uniform appearance and it will be visible in the open area. (*JAF 69.*) Any attempt to obtain a tile from the border behind the refrigerator and/or cabinet will certainly cause damage to the tiles being removed, and the adjacent tiles as well. (*JAF 70.*) Plaintiff's tile flooring was installed over a mortar bed which would need to be removed and replaced as the removal of the tile flooring will affect the integrity of the mortar bed. (*JAF 71.*) As such, the repair method suggested by Blake Services, Inc. would not take the property back to its pre-loss condition. (*JAF 72.*)

Mr. Howard further concluded that the detaching and resetting of the kitchen cabinets may be warranted by another vendor as cabinets were installed on top of

the kitchen cabinets. (*JAF 73.*) However, if this approach is taken, it would unveil the incongruent tile floors, which could become conspicuous if Plaintiff chooses to reconfigure either the floor layout or the kitchen area. (*JAF 74.*) Based on the photos from the reports from Blake Services, Inc., one of the tile options presented by Blake Services, Inc. was similar, but not within a reasonable and uniform appearance. (*JAF 75.*) One can easily see the tiles are noticeably different. (*Id.*) Even during Mr. Howard's second inspection on September 27, 2023, he took another tile sample to Plaintiff's property that was also similar to the existing tile, but it was not within a reasonable and uniform appearance. (*JAF 76.*) Mr. Howard deduced that all the tiles on the first floor of the subject property should be removed and replaced in order to have the uniform appearance it did prior to the loss. (*JAF 77.*) He concluded that it is not within industry standards to install different colored tiles in a home, especially when the original purpose of the installation was to have that uniform look and appearance. (*Howard Decl. ¶ 15.*)

As such, a triable issue of fact remains with respect to General's breach because General failed to pay for the entirety of Plaintiff's claim and intentionally elected not to conduct a proper investigation of the claim to ascertain the facts and full extent of the damages unreasonably and/or without proper cause, in breach of the terms of the subject policy. In *Egan v. Mutual of Omaha Insurance Company*, 24 Cal.3d 809 (1979), the California Supreme Court emphasized that, to protect the interests of its insured, it was "essential that an insurer **fully inquire into possible bases that might support the insured's claim**." *Id.* at 819. (emphasis added). "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interest above that of the insured." *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal.App.4th 1617, 1620 (1996).

This is no mere breach of contract. By ignoring industry standards, Defendant failed to conduct a diligent and unbiased investigation and inspection, resulting in

a substantial loss to Plaintiff. Simply, General's misleading, oppressive, and punitive actions in the claim handling is a red flag indicator. (*Danko Decl. ¶¶ 25, 37.*) Such conduct constitutes bad faith in and of itself.

### 4. Plaintiff's Damages.

It's apparent that Plaintiff has been significantly underpaid for the dwelling repairs portion of his insurance claim in connection with the August 27, 2021 burglary. (*A true and correct copy of Christopher Croisdale ["Croisdale Decl."] Declaration has been filed herewith; See ¶ 15; JAF 78.*)

Plaintiff submitted an estimate from The Croisdale Group for $127,847.18. (*JAF 79.*) Mr. Croisdale's scope of loss portrays the necessary repairs that need to be made in order to return Plaintiff's property to the condition that it was in prior to the damage resulting from the August 27, 2021 burglary. (*JAF 80.*) Replacing only two (or a few) tiles would not be adequate as the tiles would not create a reasonable uniform appearance with the remaining continuous tile flooring in the subject property. (*JAF 81.*) The new tiles would be noticeable under normal lighting conditions. (*JAF 82.*) This repair method would fall far below the standard of care within the construction and flooring industries. (*Croisdale Decl. ¶ 13.*) It is not possible to remove the tile flooring from underneath the subzero or cabinets without breaking the tiles and/or the surrounding/adjacent tiles. (*JAF 83.*) Any such attempt would create further damage to the property and the tile floors therein. (*JAF 84.*) If this method were to be implemented, the mismatched tile floors would be exposed and noticeable if Plaintiff (or any future individual who may own the home) ever decides to reorganize the floorplan of the subject property and/or the kitchen. (*JAF 85.*)

Plaintiff also submitted an estimate for $176,078.76 from Calstar Restoration for reconstruction (including tile replacement). General disregarded this estimate and did not attempt to properly and fairly reconcile this estimate with its own scope and estimate. (*JAF 86; JAF 87.*) General refused to pay the claim based on the

Calstar scope and estimate, then forced the claim to a slow crawl by not taking reasonable and proper investigative steps to determine the expected costs for tile replacement. (*Danko Decl. ¶ 32*.) General then tried to pressure and force Plaintiff to accept a non-standard and unacceptable repair method. (*Id*.)

Based on the foregoing, Plaintiff has demonstrated a triable dispute with specific facts by making a prima facie showing of the merits of his Complaint.

**B.    There are Several Triable Issues of Material Fact as to Plaintiff's Second Cause of Action For Breach of The Covenant of Good Faith and Fair Dealing.**

General claims that it did not breach the covenant of good faith and fair dealing is outrageous on its face and in complete disregard of the evidence which unequivocally demonstrates its bad faith and malicious conduct in investigating and handling this claim. Specifically, the only argument General makes is that "Plaintiff's breach of contract claim fails as a matter of law," and thus "Plaintiff's claim for bad faith, which is dependent on a viable claim for breach of contract, necessarily fails as well."

Our California Supreme Court has long recognized that the covenant of good faith and fair dealing is implied in law to assure that a contracting party "refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Egan v. Mutual of Omaha Ins. Co*., 24 Cal.3d 809, 818 (1979). The primary aim of this rule is to "to prevent a contracting party from engaging in conduct which . . . frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch*., 221 Cal.App.3d 1136, 1153 (1990).

**1.    General Paid a Fraction of The Policy Benefits It Owed to Plaintiff.**

Insurance contracts imply a covenant of good faith and fair dealing. *Love v. Fire Ins. Exchange*, *supra*, 221 Cal.App.3d at 1147. "Because peace of mind and security are the principal benefits for the insured, the courts have imposed special

obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims." *Id*. at 1148. "Thus, an insurer **must investigate claims thoroughly**; it may not deny coverage based on either unduly restrictive policy interpretations or standards known to be improper; it may not unreasonably delay in processing or paying claims." *Id*. (internal citations omitted; emphasis added). Such was not the case here for all of the reasons listed above.

The adequacy of an insurer's investigation is one of the "most critical factors bearing on the insurer's good faith...." *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., 78 Cal.App.4th 847, 879 (2000). The insurer has an obligation to fully investigate all facts and coverage theories that might support recovery under the policy; it must "**fully enquire into possible bases that might support the insured's claim**." *Jordan v. Allstate Ins. Co*., 148 Cal.App.4th 1062, 1072 (2007). An insurer that ignores evidence that would support coverage, **or conducts only a superficial, self-serving investigation, will have acted unreasonably and breached the implied covenant**. *Wilson v. 21st Century Ins. Co*., 42 Cal.4th 713 (2007) (emphasis added); *Mariscal v. Old Republic Life Ins. Co*., 42 Cal.App.4th 1617, 1624 (1996).

To begin with, for the reasons discussed and identified above, Plaintiff has set forth sufficient evidence to show that triable issues of material fact exist as to General's breach of the Policy.

The Blake Services report that General based its decision on should never have passed internal claim department scrutiny or review. General would have known the recommendations did not conform to requirements for reasonable uniform appearance or restoration of the home to pre-loss condition. (*Danko Decl. ¶ 25*.) This is not Standard of Care. (*Id*.) The company blocked Plaintiff from receiving payments due. (*Id*.) When asked to reconsider its position, General refused to consider Plaintiff's perspective or interests, and instead stood behind a misleading, false, unreasonable narrative to support its own interests. (*Id*.)

Furthermore, General deceptively yet conveniently tries to argue that in its photographs provided above, the sample tile flooring matches Plaintiff's existing tiles. However, Plaintiff has clearly established that photographs look different than in real life. During Mr. Allen's deposition, the following transpired:

> By Mr. Keosian: Do you now realize that some of the photos may actually look different -- the tiles they actually look different in person versus in the photos due to the variations that we just established.
> A: It appears that it is. It's --
> Mr. Meli: Vague and ambiguous. It's unintelligible to an extent. I'm not sure what you are getting at.
> The Witness: It appears -- it appears -- I mean, where the yellow car is, it appears those photo -- I mean, either the light or the picture taken it looks like they're -- it would be different.

(*See Ex. B to Keosian Decl. p. 128:13-24.*)

It is clear that General conveniently alleges that it "relied" on improper experts, such as Mr. Street and Blake Services, so as to strategically estimate lesser amounts of damage to Plaintiff's property. Specifically, they "relied" on Mr. Street and Mr. Ralph Padilla and informed Plaintiff that replacing the two tiles would be possible, however, when Plaintiff's counsel contacted these individuals, they declined to do the work. (*Keosian Decl. ¶¶ 5-13, Ex. D-G; See Ex. F, p. 27:19-21.*)

General's handling of Plaintiff's claim fell well below insurance industry Standards of Care. General failed to conduct and pursue a fair objective, and unbiased investigation and its departure from Industry Standard led to unreasonable refusals in paying the entirety of Plaintiff's claim. From the outset, General failed to meet the Standard of Care in its investigation of Plaintiff's claim by not determining the full scope and costs of the tile items, including the line-item costs of Plaintiff's rebuild payable under the dwelling portion of his policy, whether submitted by Plaintiff or discovered during Generals' investigation—in a thorough, fair, objective, and timely manner. (*Danko Decl. ¶ 29.*)

/ / /

/ / /

Zane Street's own deposition testimony included the following:

> By Mr. Keosian: And if you can tell that there's a difference in flooring material standing under normal lighting conditions within a few feet away, is that a reasonably uniform appearance in your opinion?
> Mr. Meli: Calls for a legal conclusion.
> A: If I can tell the difference at the close of a distance with normal lighting, I wouldn't call it reasonable, no.
> Q. And since -- I'm sharing with you the screen again with Exhibit 4. And since this flooring, you can tell that there is a difference of the tiles -- the difference between the tiles that are on top versus the tiles that are on the bottom, since it's not reasonably uniform in appearance, that's why your conclusion remains that you should remove some tiles under the large cabinet and the Sub-Zero and replace it with the liberated tiles to complete the repair; is that correct?
> A. Yes.

(*See Ex. F to Keosian Decl. p. 50:14-25; 51:1-9.*)

> By Mr. Keosian: Okay. "It certainly would make a repair that most would never see." But you saw the difference, right, Mr. Street?
> A: I saw the difference.
> Q: Did the homeowner also see the difference?
> A: I'm sure he did. I can't recall his comment on it.

(*See Ex. F to Keosian Decl. p 64:4-12.*)

Finally, Ms. Danko concluded in her Declaration that "based on my review of the claim documents, my experience, training, and knowledge, it is my opinion that General Insurance handled the claim unreasonably, unfairly, and not in accordance with industry customs, practices, or Standard of Care. General disregarded information that it was not possible to find matching tiles to restore the home to its pre-loss condition, and instead twisted a misleading narrative in its favor to willfully deny benefits owed." (*Danko Decl. ¶ 38.*)

By doing so, and also ignoring Plaintiff's submitted reports, General ignored evidence that would support coverage, and, instead, conducted a flawed, self-serving investigation. This conduct is certainly unreasonable and in breach of the implied covenant. *See Wilson v. 21st Century Ins. Co*, *supra*, 42 Cal.4th 713; *Mariscal v. Old Republic Life Ins. Co.*, *supra*, 42 Cal.App.4th at 1624.

## IX.   GENERAL *ALTERNATIVELY* REQUESTS PARTIAL SUMMARY JUDGMENT AS TO THE BAD FAITH CLAIM WHERE THERE IS A GENUINE DISPUTE REGARDING THE TILE REPAIR

Under California law, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007). Thus, "[a]n insured's claim for breach of the implied covenant of good faith and fair dealing may be dismissed on summary judgment if the defendant insurer can show that there was a 'genuine dispute' as to liability." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 823 (9th Cir. 2014) (citing *Guebara*, *supra*, 237 F.3d at 992); *Henney v. State Farm Gen. Ins. Co.*, No. 2:21-cv-01452-SPG-KS, 2023 WL 3564933, at *4 (C.D. Cal., Apr. 21, 2023).

"To establish the existence of a genuine issue, an insurer does not need to prove that it was justified or correct in denying the claim—indeed, an insurer that relies on a 'genuine issue' to deny coverage 'might' still 'be liable for breach of contract.'" *Shenon v. N.Y. Life Ins. Co.*, No. 2:18-CV-00240-CAS (AGRx), 2020 WL 227870, at *5 (C.D. Cal. Jan. 13, 2020) (citing *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001)). A "genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson*, 42 Cal.4th at 723. "An insurer may demonstrate the existence of a genuine dispute by showing that 'it relied on opinions from experts while evaluating the insured's claim.'" *Henney*, 2023 WL 3564933, at *4 (quoting *Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007); *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000)).

/ / /

As noted by General above, in *Lyons*, the court held that the genuine dispute doctrine applied as a matter of law and confirmed partial summary judgment in favor of the insurer on the insured's bad faith claim. *Lyons*, 2009 WL 1077294, at *6. There, the stucco and windows on the east side of the insured's home sustained heat and smoke damage because of a fire at a neighboring home. *Id.* at *1. The insurer inspected the damage and paid to repair the stucco and replace the windows on the east side of the insured's home. *Id.* at *2. The insured, however, demanded that the insurer replace all windows and re-stucco the entire house to make sure the windows and stucco color and texture all matched. *Id.* In response, the insurer agreed to reinspect the damage and hired a construction consultant to perform the reinspection. *Id.* The consultant concluded that the stucco color and design of the windows could be matched. *Id.* The insurer declined to pay to re-stucco the entire house and to replace all the windows because under Section 2695.9(a)(2) it was only required to "replaced all items *in the damaged area* so as to conform to *a reasonably uniform appearance*." *Id.* at *5 (emphasis original). After noting that Section 2695.9(a)(2) does not require a "perfect match," the court affirmed partial summary judgment in favor of the insurer pursuant to the genuine dispute doctrine because there was no evidence that the insurer acted unreasonably by declining to pay additional policy benefits where it relied on the opinion of a construction expert. *Id.* at *6.

As another example, this Court in *Henney* applied the genuine dispute doctrine to grant partial summary judgment to the insurer where genuine coverage disputes existed as to (1) the amounts owed to the insured for repairs and stolen personal property following the burglary of her home, and (2) the insured's failure to comply with the insurer's request for a second examination under oath. *Henney*, 2023 WL 3564933, at *4. As pertinent to the Lawsuit, this Court found that the insurer acted reasonably because it relied on the opinion of its construction expert that at least some of the damages for which the insured sought repair costs were

consistent with general wear and tear rather than burglary. *Id.* The court also noted that the insured failed to present evidence showing the absence of a genuine dispute concerning the alleged amounts owed. *Id.*

Here, a genuine dispute as to coverage exist as to whether General is obligated to pay for a full tile floor replacement under Plaintiff's dwelling coverage and for the RCV holdback on Plaintiff's stolen property under Plaintiff's personal property coverage.

As to the dwelling portion of Plaintiff's claim, General and Plaintiff found themselves at an impasse with respect to the repair of two kitchen tiles, with General proposing repair of the two tiles only in comparison to Plaintiff wanting a complete first floor tile replacement. JAF 15-18, 39. Given this impasse, General contacted Blake Services to act as a flooring consultant for the claim. JAF 19. Following three inspections, Blake Services found a similar looking, almost identical replacement tile, and proposed a repair that would take tiles from under the cabinets/appliances to repair the damaged kitchen tiles, which repair goes above and beyond what is required by the Policy or Section 2695.9(a)(2). JAF 20-22. Alternatively, Blake could simply replace the damaged tiles with tiles located at Daltile. JAF 20-22, 25. General's final building estimate (and payments made to Plaintiff) reflected Blake Services' proposal. JAF 23-26.

As to the Plaintiff's personal property claim, which is only at issue to the extent the Court decides to consider it, Plaintiff plainly has not submitted any invoices proving he actually replaced the property. JAF 33. Having failed to satisfy that condition precedent, his claim has no merit at all. JAF 12.

Given the foregoing, genuine coverage disputes exist as to whether General is obligated to pay for a complete floor replacement or for the RCV Holdback on Plaintiff's stolen property. At minimum, partial summary judgment on Plaintiff's claim for bad faith should be granted in favor of General.

/ / /

X.      **PLAINTIFF'S OPPOSITION AS TO PARTIAL SUMMARY
        JUDGMENT ON BAD FAITH**

        A.      **The Genuine Dispute Doctrine is Inapplicable to the Present
                Case.**

        It is important to note that "[a] genuine dispute exists only where the
insured's position is maintained in good faith and on reasonable grounds." *Chateau
Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co*, 90 Cal.App.4th 335,
348-49 (2001). Accordingly, the genuine dispute doctrine does not "alter the
standards for deciding and reviewing motions for summary judgment." *Wilson*,
*supra*, 42 Cal.4th at 724.

        As the California Supreme Court explained in *Wilson*:

> The genuine dispute rule **does not relieve an insurer from its
> obligation to thoroughly and fairly investigate, process and
> evaluate the insured's claim. A genuine dispute exists *only where
> the insurer's position is maintained in good faith and on reasonable
> grounds**. [Citations.] Nor does the rule alter the standards for deciding
> and reviewing motions for summary judgment. The genuine issue rule
> in the context of bad faith claims allows a [trial] court to grant summary
> judgment when it is undisputed or indisputable that the basis for the
> insurer's denial of benefits was reasonable--for example, where even
> under the plaintiffs version of the facts there is a genuine issue as to the
> insurer's liability under California law. [Citation.] . . . On the other hand,
> **an insurer is not entitled to judgment as a matter of law where,
> *viewing the facts in the light most favorable to the plaintiff*, a jury
> could conclude that the insurer acted unreasonably**. *Wilson*, *supra*,
> 42 Cal.4th at pp. 723-724, fn. omitted, emphasis added.

        A jury could well conclude that General's investigation was not "full, fair
and thorough." *Bosetti v. United States Life Ins. Co. in City of New York*, 175
Cal.App.4th 1208, 1237 (2009) ["[a]n insurer cannot claim the benefit of the
genuine dispute doctrine based on an investigation or evaluation of the insured's
claim that is not full, fair and thorough"]; see *Chateau Chamberay*, at 348-349 [a
biased investigation may be shown where "the insurer's experts were

unreasonable"]; *Wilson*, at 721 [insurer acts unreasonably where it ignores evidence available to it which supports the insured's claim].) Consequently, the "genuine dispute" doctrine does not insulate General from Plaintiff's bad faith claim.

Case law makes clear that the genuine dispute doctrine is simply another way of arguing that the insurer behaved reasonably in adjusting the claim. *See McCoy v. Progressive West Ins. Co.*, 171 Cal.App.4th 785, 792 (2009) ... "genuine dispute" doctrine is "subsumed within the concept of what is reasonable and unreasonable." *McCoy* holds that failure of a trial court to instruct the jury concerning the genuine dispute doctrine is not reversible error. The only relevant question is whether the denial was unreasonable or without proper cause. *Id*. at 794.

General argues it did not unreasonably withhold benefits because it relied on the reports and findings submitted by its so-called experts. This defense, known as the "genuine dispute doctrine," fails where the insurer dishonestly selects its experts, its methods of inspection, the insurer's experts were unreasonable, or the insurer failed to conduct a full and thorough investigation in a timely manner. As set forth herein, this is precisely what General did in this case.

General did not diligently search for facts to support coverage or honestly and objectively evaluate the damages. General did not promptly pay benefits due under the policy. Rather, when General was presented with opinions by Plaintiff's experts which demonstrated the full extent of the damage to Plaintiff's premises and personal property, instead of accepting those opinions, General ignored them and sought other opinions which were more favorable to it and substantially less favorable to Plaintiff (and which were contrary to reality).

During Plaintiff's Deposition, Plaintiff testified as follows:
By Mr. Keosian: Did Mr. Allen or anybody else from General ever ask you if the tiles underneath the refrigerator or the cabinet will ever be exposed?
A: No.

Q: Do you believe that the statement that "Since the tile behind the cabinets and behind the built-in fridge will never be exposed" is an accurate statement?

A: No, because I even told them that what if I decide to rearrange my kitchen, so it's not an accurate statement, no.

Q: Do you feel that having a different tile underneath your refrigerator would take you back to your pre-loss condition?

A: Say that one more time. I'm sorry.

Q: Do you feel that having a different tile underneath the refrigerator or underneath your built-in cabinet would take you back to its pre-loss condition?

A: No, absolutely not because before it was not – before the incident the tiles were the same. I didn't have any broken or different color tiles.

…

Q: Did Mr. Allen ever tell you that you would have to make certain disclosures to any potential buyers if you chose to ever sell the house?

A: No.

Q: Do you believe that – or do you feel that General was being truthful and honest with you by not sharing that fact with you?

A: No. I don't believe that was -- that was honesty.

(*See Exhibit H to the Declaration of Zareh Jack Keosian, pp. 84:16-25; 85:1-12, 17-25.*)

In essence, General made decisions regarding payments that were due under the policy based on opinions which were more favorable to them rather than the insured, which have deprived Plaintiff of the benefits he was entitled to under the policy. General delayed payment to Plaintiff in regard to the damages sustained to his home. General engaged in a pattern and practice of trying to minimize the value of Plaintiff's claim to Plaintiff's significant detriment.

Finally, that General paid a part of the claim is a complete red herring. General was <u>obligated to pay the full amount</u> of the claim under the existing policy. Indeed, failure to pay the full amount due constitutes a breach of contract and can provide the basis for a bad faith action. *Mariscal v. Old Rep. Life Ins. Co.*, 42 Cal.App.4th 1617, 1623 (1996); *Bosetti v. U.S. Life Ins. Co., in City of New York*, 175 Cal.App.4th 1208, 1235-36 (2009).

/ / /

The evidence in this case *overwhelmingly* confirms that General failed to fulfill its obligations under the covenant of good faith and fair dealing and were dishonest and deceitful throughout the handling of the claim. Furthermore, General did not come remotely close to giving Plaintiff's interests equal consideration and in fact put its own interests ahead of Plaintiff. In fact, Ms. Danko's Declaration sets forth sufficient evidence to show that General's conduct was intentional, deliberate, deceitful, and fraudulent.

As explained above, General is adamant that repairing two tiles is doable, however its own so-called consultant has disputing and conflicting opinions on whether the flooring would result in a uniform appearance. Again, Mr. Street testified that a difference in the tile can be seen, yet General still contends, till this day, that it was reasonably uniform in appearance. (*Keosian Decl. ¶ 10; Ex. F, p 64:4-12.*) If this is not malicious, oppressive, outrageous, despicable and fraudulent, then what is?

If the Court finds that both parties have advanced reasonable positions with respect to whether there was a "genuine" dispute, positions under which a reasonable jury could find in either party's favor, summary judgment must be denied.

## XI.  GENERAL INSURANCE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Because Plaintiff's claim for bad faith fails as a matter of law pursuant to the genuine dispute doctrine, he cannot recover punitive damages. *Tibbs v. Great Am. Ins. Co.*, 755 F. 2d 1370, 1375 (9th Cir. 1985) ("Under California law, punitive damages are not available for breaches of contract no matter how gross or willful"); *Henny*, *supra*, 2023 WL 3564933, at *6.

Further, as a matter of law, Plaintiff cannot establish by "clear and convincing" evidence that General acted with oppression, fraud, or malice as

required by California Civil Code section 3294.   Under California law, "the evidence required to support an award of punitive damages for breach of the implied covenant of good faith and fair dealing is 'of a different dimension' from that needed to support a finding of bad faith."   *Shade Foods, Inc.*, 78 Cal. App. 4th at 909-10 (internal citations omitted).   As the undisputed facts demonstrate, General promptly investigated and adjusted Plaintiff's claim.   It considered all information provided by Plaintiff and instructed its expert to inspect Plaintiff's floors not once, but *three*, times to determine the feasibility of repairing versus replacing the floors.

To the extent Plaintiff disagrees with General's coverage determination, such disagreement is the result of a genuine dispute, and not due to oppression, fraud, or malice.   Accordingly, partial summary judgment should also be granted to General Insurance as to Plaintiff's claim for punitive damages.

## XII.   PLAINTIFF'S OPPOSITION AS TO PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES

### A.   General Engaged in a Systemic, Company-Wide Bad Faith Effort to Save Money, Thereby Entitling Plaintiff to Punitive Damages.

The conduct of General in how it handled this claim was nothing short of malicious and fraudulent and there is more than ample evidence to submit this issue to the jury. In *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal.3d 809, 820 (1979), the California Supreme Court recognized that "[t]he availability of punitive damages is [] compatible with recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship." "Punitive damages are therefore made available 'to discourage the perpetuation of objectionable corporate policies' that breach the public's trust and sacrifice the interests of the vulnerable for commercial gain." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1164–65 (2002) (quoting *Egan*, 24 Cal.3d at 819). / / /

In *Simon v. San Paolo U.S. Holding Co. Inc*., 35 Cal.4th 1159 (2005), the California Supreme Court stated that, in order to award punitive damages, California law requires conduct done with "willful and conscious disregard of the rights or safety of others" or despicable conduct done "in conscious disregard" of a person's rights. *Id*. at 1181. Under California Civil Code § 3294, damages are appropriate when the defendant is guilty of "oppression, fraud, or malice." Plaintiff has demonstrated facts showing intentional, willful conduct carried out by General with a conscious disregard for Plaintiff's rights.

"[T]he relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position. The availability of punitive damages is thus compatible with recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship." *Egan*, *supra*, 24 Cal. 3d at 820. In insurance cases, "**[d]eterminations related to assessment of punitive damages have traditionally been left to the discretion of the jury**." *Id*. at 821. (emphasis added).

General's conduct throughout the handling of Plaintiff's claim was willful and with conscious disregard to Plaintiff. General improperly and falsely tried to require Plaintiff to damage one portion of his house in order to repair another portion. (*Danko Decl.* ¶ *19.*) General's only plan of action was to require Plaintiff to render a portion of the kitchen unusable in the future by taking tiles from one area and placing them in another. (*Id.*) To be certain, no such requirement of an insured exists in the policy or insurance regulations. (*Id*.) This was a highly unusual and oppressive action. (*Id*.) General also elected to pursue a cumbersome, tedious, and labor-intensive claim process that was guaranteed to take excessive time and produce unreasonable hurdles for Plaintiff. (*Danko Decl.* ¶ *20.*) Had General followed industry Standard of Care and best practices, General could have determined what payments were owed to Plaintiff for dwelling tile coverage (and related costs) in a fair and timely manner. (*Id*.) Instead, General repeatedly and

improperly placed the burden on its insured to accept an insufficient, unreasonable, and unworkable tile "repair." (*Id*.)

The evidence that has been thoroughly detailed hereinabove shows that the claim practice of General was egregious. Their decision was based on information that was intentionally inadequate and they purposefully directed, manipulated and misrepresented the facts in order to minimize the value of Plaintiff's claim. This conduct was detriment and harmful to Plaintiff who remains thousands of dollars in debt because of General's malicious and fraudulent conduct. Such conduct absolutely warrants the imposition of punitive damages.

## XIII.  GENERAL INSURANCE: CONCLUSION

Based on the undisputed facts and available evidence, Plaintiff's claims for breach of contract, bad faith, and punitive damages fail as a matter of law.  First, Plaintiff's breach of contract claim fails because a simple repair would achieve a reasonably uniform appearance in the damaged area.  Second, Plaintiff's operative complaint does not allege that he is entitled to recover any RCV Holdback for his stolen personal property.  Thus, there can be no disputed *material* fact on this issue as a matter of law.  To the extent the Court is inclined to consider the issue of RCV Holdback, Plaintiff has not produced in discovery receipts showing that he ever replaced any of his stolen property.  Consequently, there is no genuine issue of fact as to whether Plaintiff is entitled to recover the RCV Holdback.  Because Plaintiff's breach of contract claim fails, his claims for bad faith and punitive damages necessarily fail as well.

Regardless of whether Plaintiff's claim for breach of contract survives summary judgment, the genuine dispute doctrine alternatively dictates that Plaintiff's claims for bad faith and punitive damages be dismissed.  Specifically, whether Plaintiff's tile floors can be repaired pursuant to the terms of the Policy and Section 2695.9(a)(2) of the Claims Regulations is a genuine dispute over coverage.  Likewise, Plaintiff never met his obligation to present receipts within 180 days of

the loss proving he actually replaced stolen personal property, so there is no dispute as to his entitlement to RCV Holdback on those items.  Consequently, Plaintiff's claims for bad faith and punitive damages are subject to partial summary judgment.

Therefore, General respectfully requests that this Court grant its motion for summary judgment, and enter Judgment in its favor, declaring as follows:

A.    Plaintiff's First Cause of Action for Breach of Contract fails because there is no genuine dispute that General met its obligations under the Policy by: (a) paying to repair Plaintiff's tile floors as opposed to paying for a full replacement of those floors; and (b) paying for the ACV of Plaintiff's stolen personal property, pending confirmation of replacement.

B.    Plaintiff's Second Cause Action for Bad Faith consequently fails as a matter of law because there can be no bad faith absent a breach of contract.

C.    Alternatively, this Court should grant partial summary judgment in favor of General as to Plaintiff's Second Cause of Action for Bad Faith, or at a minimum, Plaintiff's demand for punitive damages.

## XIV. <u>PLAINTIFF: CONCLUSION</u>

The evidence in this case unequivocally demonstrates that General's response to Plaintiff's claim was executed in bad faith and reprehensibly manipulated, misrepresented, and disregarded crucial evidence. General attempted to distort the truth to avoid acknowledging that the loss far exceeded what it was willing to cover, all while downplaying the severity of Plaintiff's loss.

Plaintiff has proven that General has persistently refused to pay for the full extent of the property damage caused by the burglary and vandalism. General's refusal to fulfill its payment obligations and its ongoing mistreatment of Plaintiff not only violate the insurance contract terms but also demonstrate unreasonable, malicious, oppressive, and fraudulent behavior.

For all of the foregoing reasons, Plaintiff respectfully submits that there exist triable issues of material fact as to his causes of action for Breach of Contract and

Bad Faith, as well as his claim for punitive damages. Therefore, General's Motion should be denied in its entirety.

Dated:   October 3, 2023                     NICOLAIDES FINK THORPE
                                             MICHAELIDES SULLIVAN LLP


                                    By:   _/s/ Patricia A. Daza-Luu_
                                             Patricia A. Daza-Luu
                                             Jacob F. Meli
                                          Attorneys for Defendant General
                                          Insurance Company of America

Dated:   October 3, 2023                     KEOSIAN LAW LLP


                                    By:   _/s/ Zareh Jack Keosian_
                                             Harout Greg Keosian
                                             Zareh Jack Keosian
                                             Eileen Keusseyan
                                          Attorneys for Plaintiff Vahe Khachunts

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Statement of Authority to File**

Per Civil L.R. 5-4.3.4(a)(2)(i), I attest that all signatories on this document and on whose behalf the filing is submitted concur in the filing's content and have authorized the filing of this document.

Dated:  October 3, 2023

By:   */s/ Patricia A. Daza-Luu*

Patricia A Daza-Luu