PATRICIA A. DAZA-LUU (SBN: 261564)
pdazaluu@nicolaidesllp.com
JACOB F. MELI (SBN: 293143)
jmeli@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
777 South Figueroa St., Suite 750
Los Angeles, CA 90017
Telephone:    (213) 402-1245
Facsimile:    (213) 402-1246

Attorneys for Defendant
GENERAL INSURANCE
COMPANY OF AMERICA

HAROUT GREG KEOSIAN (SBN: 236352)
hgk@keosianlaw.com
ZAREH JACK KEOSIAN (SBN: 303278)
zjk@keosianlaw.com
EILEEN KEUSSEYAN (SBN: 149482)
ek@keosianlaw.com
KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
Telephone:  (818) 986-9331
Facsimile:   (818) 986-9341

Attorneys for Plaintiff
VAHE KHACHUNTS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAHE KHACHUNTS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL INSURANCE COMPANY OF AMERICA, a New Hampshire corporation; DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 2:22-cv-09325-SPG (KSx)<br><br>**JOINT APPENDIX OF FACTS**<br><br>**Accompanying Documents:**<br>Joint Notice of Motion and Joint Brief; Joint Appendix of Evidence; Joint Appendix of Objections; Declaration of Patricia A. Daza-Luu; Declaration of Laura Curtis; Declaration of Brett Allen; Supplemental Declaration of Patricia A. Daza-Luu; Declaration of Vahe |

Khachunts; Declaration of Zareh
Keosian; Declaration of Christopher
Croisdale; Declaration of Maribeth
Danko; Declaration of Tim Howard;
Proposed Order

Date:      November 1, 2023
Time:      1:30 p.m.
Dept.:     5C
Judge:     Hon. Sherilyn Peace Garnett

State Court Complaint filed:
November 17, 2022

JOINT APPENDIX OF FACTS

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant and General Insurance Company of America ("General") and Plaintiff Vahe Khachunts ("Plaintiff") hereby submit this Joint Appendix of Facts along with General's Motion for Summary Judgment, or in the Alternative for Partial Summary Judgment.

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|-----|------|---------------------|----------------------|
| **The Incident** | | | |
| 1. | On August 27, 2021, Plaintiff's home located at 13416 Chandler Boulevard, Sherman Oaks, California 91401 (the "Residence") was burglarized (the "Incident"). | Complaint, ¶ 8. ECF 1-2. | Undisputed. |
| 2. | Plaintiff reported that during the course of the Incident, floor tiles in his kitchen were damaged. | Declaration of Laura Curtis ("Curtis Decl."), ¶ 6.<br><br>Complaint, ¶ 9. ECF 1-2).<br><br>Blake Services Report (May 11, 2022). Declaration of Brett Allen ("Allen Decl."), Ex. 2 (GICA000516-517). | Undisputed. |
| 3. | Plaintiff also reported the burglars stole personal property, including | Curtis Decl., ¶ 5. | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | significant quantities of designer goods (e.g., Gucci and Versace luxury items). | Loss Details Excerpt. Curtis Decl., Exhibit ("Ex.") 2 (GICA000926).<br><br>Personal Property Estimate (April 26, 2022). Curtis Decl., Ex. 6. | |
| 4. | Plaintiff reported the Incident to General under homeowners policy number OY7997387 for the period June 8, 2021 to June 8, 2022 (the "Policy"). | Complaint, ¶ 10. ECF 1-2.<br><br>Curtis Decl., ¶ 4. | Undisputed. |
| **Relevant Policy Provisions** | | | |
| 5. | The Policy applies to the Residence. | Certified Policy. Curtis Decl., Ex. 1.<br><br>Policy. Declaration of Patricia A. Daza-Luu ("Daza-Luu Decl."), Ex. 1. | Undisputed. |
| 6. | Under Section I – Building Property We Cover – Coverage A, the Policy applies to "the dwelling on the residence premises… [and] materials and supplies located on or next to the residence premises used to construct, alter or repair the dwelling or other | Certified Policy. Curtis Decl., Ex. 1, p. 34 (GICA000881).<br><br>Policy. Daza-Luu Decl., Ex. 1, p. 24 (KHA000024). | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | structures on the residence premises." | | |
| 7. | Under Section I – Building Property Losses We Cover, the Policy further specifies it applies to "accidental direct physical loss to property described in Building Property We Cover except as limited or excluded." | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 34 (GICA000881). <br><br> <u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 24 (KHA000024). | Undisputed. |
| 8. | Under Section I – Personal Property We Cover – Coverage C, the Policy applies to "[p]ersonal property owned or used by any insured […] while it is anywhere in the world." | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 37 (GICA000884). <br><br> <u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 27 (KHA000027). | Undisputed. |
| 9. | Under Section I – Personal Property Losses We Cover, the Policy specifies it covers "[t]heft, including attempted theft and loss of property from a known location when it is likely that the property has been stolen." | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 39 (GICA000886). <br><br> <u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 29 (KHA000029). | Undisputed. |
| 10. | Under Section I – Property Conditions, the Policy includes Replacement Cost coverage for Coverage A (dwelling): "the replacement cost of that part of the damaged | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 45 (GICA000892). | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|-----|------|---------------------|----------------------|
| | building for equivalent construction and use on the same premises as determined shortly following the loss." | <u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 35 (KHA000035). | |
| 11. | The Policy includes a "Personal Property Replacement Cost" endorsement, which extends Replacement Cost Coverage to Coverage C (personal property). | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 45 (GICA000892).<br><br><u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 56 (KHA000056). | Undisputed. |
| 12. | Under the Conditions section, the Personal Property Replacement Cost endorsement specifies that Plaintiff "may make a claim for loss on an actual cash value basis and then make a claim, within 180 days after the loss, for any additional liability under replacement cost, after you have repaired or replaced the property." | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 66 (GICA000913).<br><br><u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 48 (KHA000056). | Undisputed. |
| 13. | Under the Definitions section of the Policy, the term "replacement cost" with respect to Coverage A (dwelling) means "the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 59 (GICA000905).<br><br><u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 48 (KHA000048). | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | and quality, without deduction for depreciation." | | |
| 14. | Under the Definitions section of the Policy, the term "replacement cost" with respect to Coverage C (personal property) means "the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen." | <u>Certified Policy.</u> Curtis Decl., Ex. 1, p. 58 (GICA000905).<br><br><u>Policy.</u> Daza-Luu Decl., Ex. 1, p. 48 (KHA000048). | Undisputed. |
|  | **Plaintiff's Breach of Contract Claim Fails Because a Repair of Plaintiff's Tile Floors will Achieve a "Reasonably Uniform Appearance."** | | |
| 15. | General inspected Plaintiff's home and determined that the two damaged tiles in Plaintiff's kitchen could be repaired. | <u>Repair Estimate (Dec. 13, 2021).</u> Curtis Decl., Ex. 3 (GICA000067-74). | Disputed. The two damaged tiles in Plaintiff's kitchen cannot be repaired. It is not possible to remove the tile flooring without breaking tiles and/or the surrounding/ adjacent tiles.<br><br><u>Supporting Evidence:</u> Keosian Decl. ¶ 3; Exhibit. B, pp. 82:17-23; 122:13-24; 128:13-24.<br><br>Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 16. | General paid Plaintiff certain amounts to repair the two damaged tiles in his kitchen based on its prior inspection. | Letter to Plaintiff (Jan. 7, 2022). Curtis Decl., Ex. 4 (GICA000065-66). | Disputed in Part. General paid to replace the two tiles, not to "repair" them. However, the two damaged tiles in Plaintiff's kitchen cannot be repaired. It is not possible to remove the tile flooring without breaking tiles and/or the surrounding/ adjacent tiles. Supporting Evidence: Keosian Decl. ¶ 3; Exhibit. B, p. 44:11-20. Croisdale Decl. ¶¶ 12-14; Exhibit B. Howard Decl. ¶¶ 8-15; Exhibit B. |
| 17. | Plaintiff disagreed that his tile floors could be repaired, and stated that "[r]eplacing the tiles with different tiles is not acceptable under any condition." | Complaint, ¶ 16. ECF 1-2. Email from Plaintiff to General (Apr. 13, 2022). Daza-Luu Decl., Ex. 2 (KHA000306-307). | Disputed. Replacing only two (or a few) tiles would not be adequate as the tiles would not create a reasonable uniform appearance with the remaining continuous tile flooring in the subject property. The new tiles would be noticeable under normal lighting |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | conditions. Since the tile is installed in a herringbone pattern, obtaining a full tile will be impossible as all the tiles that are installed under the kitchen cabinets still have exposure in the kitchen area beyond the kitchen cabinet.<br><br>Supporting Evidence: Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |
| 18. | Plaintiff provided estimates from CalStar Restoration and The Croisdale Group proposing the complete replacement of the tile floors on the first floor of his home (923.97 square feet). | CalStar Estimate (Feb. 3, 2022). Daza-Luu Decl., Ex. 3.<br><br>Croisdale Estimate (Dec. 10, 2022). Daza-Luu Decl., Ex. 4. | Undisputed. |
| 19. | General hired Blake Services, Inc. ("Blake Services") to inspect Plaintiff's tile floors and determine whether a repair could achieve a reasonably uniform appearance. | Allen Decl., ¶ 5-6.<br><br>Repair Estimate (Mar. 2, 2022). Allen Decl., Ex. 1 (GICA000307). | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 20. | Blake Services inspected Plaintiff's home on March 10, and April 7, and May 10, 2022. | <u>Blake Services Report (May 11, 2022).</u> Allen Decl., Ex. 2 (GICA000510).<br><br><u>Complaint, ¶ 14.</u> ECF 1-2.<br><br><u>Deposition Transcript of Plaintiff (Excerpt).</u> Daza-Luu Decl., Ex. 6 (41:8-17) | Undisputed. |
| 21. | Blake Services obtained a tile sample from Daltile, as requested by Plaintiff, which Blake Services concluded was "not a perfect match," but "certainly would make a repair that most would never see." | <u>Blake Services Report (May 11, 2022).</u> Allen Decl., Ex. 2 (GICA000511, and GICA000522-523). | Disputed. Zane Street testified that he saw the difference in the tiles. Additionally, the sample tile that Bake Services obtained and recommended would not take Plaintiff's property back to its pre-loss condition. The tiles General recommended were not reasonably uniform in appearance. Furthermore, General had difficulty in locating a matching tile. In addition, General hired a wood flooring expert rather than a tile flooring expert. Even if a tile is successfully |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | removed intact, the replacement of that tile will have to be replaced with a tile that is not within a reasonable and uniform appearance and it will be visible in the open area. Any attempt to obtain a tile from the border behind the refrigerator and/or cabinet will certainly cause damage to the tiles being removed, and the adjacent tiles as well.<br><br>Supporting Evidence: Keosian Decl. ¶¶ 3, 10; Exhibit. B, pp. 82:17-23; 122:13-24; 128:13-24; Exhibit F, p. 64: 4-12.<br><br>Khachunts Decl. ¶¶ 14-18.<br><br>Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |
| 22. | Blake Services concluded that "the flooring can be repaired by removing some tiles from under a | Blake Services Report (May 11, 2022). Allen Decl., | Disputed. The sample tile that Bake Services obtained and recommended would |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | large cabinet. After that a similar tile could be used to replace these areas. Cabinet detach and reset as well as removing the Sub-Zero and replacing it by a professional service. The liberated tiles can then be installed to complete the repair." | Ex. 2 (GICA000511). | not take Plaintiff's property back to its pre-loss condition. The tiles General recommended were not reasonably uniform in appearance. Furthermore, General had difficulty in locating a matching tile. In addition, General hired a wood flooring expert rather than a tile flooring expert. Even if a tile is successfully removed intact, the replacement of that tile will have to be replaced with a tile that is not within a reasonable and uniform appearance and it will be visible in the open area. Any attempt to obtain a tile from the border behind the refrigerator and/or cabinet will certainly cause damage to the tiles being removed, and the adjacent tiles as well.<br><br>Supporting Evidence: Keosian Decl. ¶¶ 3, 10; Exhibit. B, pp. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | 82:17-23; 122:13-24; 128:13-24; Exhibit F, p. 64: 4-12.<br><br>Khachunts Decl. ¶¶ 14-18.<br><br>Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |
| 23. | Based on Blake Services' inspections and conclusions, General advised Plaintiff that a repair (whether removing the tiles from beneath a cabinet or appliance or simply replacing the damaged tiles with the new tiles located at Daltile) would achieve a reasonably uniform appearance, such that complete replacement of all first floor tile was unnecessary. | Email to Plaintiff (May 13, 2022)., Daza-Luu Decl., Ex. 5 (KHA000316-317). | Disputed. The sample tile that Bake Services obtained and recommended would not take Plaintiff's property back to its pre-loss condition. The tiles General recommended were not reasonably uniform in appearance. Furthermore, General had difficulty in locating a matching tile. In addition, General hired a wood flooring expert rather than a tile flooring expert. Even if a tile is successfully removed intact, the replacement of that tile will have to be replaced with a tile that is not within a |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | reasonable and uniform appearance and it will be visible in the open area. Any attempt to obtain a tile from the border behind the refrigerator and/or cabinet will certainly cause damage to the tiles being removed, and the adjacent tiles as well.<br><br>Supporting Evidence: Keosian Decl. ¶¶ 3, 10; Exhibit. B, pp. 82:17-23; 122:13-24; 128:13-24; Exhibit F, p. 64: 4-12.<br><br>Khachunts Decl. ¶¶ 14-18.<br><br>Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |
| 24. | In response to Plaintiff's further demand for a full replacement of his tile floors, General sent a letter explaining that a full replacement of all first floor tile is not owed because (1) the undamaged areas did not | Letter to Plaintiff (July 7, 2022). Daza-Luu Decl., Ex. 7 (KHA000349-352). | Disputed. General ignored the Standard of Care and rather than allow for replacement of tiles to conform to a reasonably uniform appearance and to restore the damaged |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|-----|------|---------------------|----------------------|
| | sustain "an accidental direct physical loss" as required by the Policy, and (2) Blake Services advised that a repair would conform to a "reasonably uniform appearance" as required by the 10 C.C.R. section 2695.9(a)(2). | | property to no less than its condition prior to the loss, General required Plaintiff to damage one section of the kitchen in order to "repair" another. The Standard of Care requires replacement of the entirety of the tiles. It is not within industry standards to install different colored tiles in a home, especially when the original purpose of the installation was to have that uniform look and appearance.<br><br>Supporting Evidence: Danko Decl. ¶¶ 22-23.<br><br>Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |
| 25. | Plaintiff's tile floors have an inconsistent herringbone pattern and at least some of the grout is mismatched based on pictures taken by Plaintiff's construction | Croisdale Estimate (Dec. 10, 2022). Daza-Luu Decl., Ex. 4 (KHA000085-86). | Disputed. None of Plaintiff's flooring is mismatched. The tile flooring that was installed in Plaintiff's residence was purchased at the same |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | consultant Christopher Croisdale and pictures taken at the September 13, 2023 inspection of Plaintiff's home. | Photos from the September 13, 2022 Inspection. Daza-Luu Decl., Ex.8.<br><br>Daza-Luu Decl., ¶ 12. | time, all from the same batch, and installed at the same time, as was the grout. All the tiles installed on the first floor of Plaintiff's residence matched at the time of the August 27, 2021 burglary.<br><br>Supporting Evidence: Khachunts Decl. ¶ 8. |
| 26. | Following Blake Services' inspections, General paid additional amounts under Coverage A (dwelling) of the Policy to repair the tile floors on the first floor of Plaintiff's home. | Loss Payment Record. Curtis Decl., Ex. 5 (GICA000969-971). | Disputed in Part. General paid to replace the two tiles, not to "repair" them. However, the two damaged tiles in Plaintiff's kitchen cannot be repaired. It is not possible to remove the tile flooring without breaking tiles and/or the surrounding/ adjacent tiles.<br><br>Supporting Evidence: Keosian Decl. ¶ 3; Exhibit. B, p. 44:11-20.<br><br>Croisdale Decl. ¶¶ 12-14; Exhibit B.<br><br>Howard Decl. ¶¶ 8-15; Exhibit B. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|-----|------|---------------------|----------------------|
| **Plaintiff's Breach of Contract Claim Fails Because he has not Provided Receipts to Recover the RCV Holdback and this Claim is not Even at Issue** | | | |
| 27. | In April 2022, General issued a payment of $98,210.12 to compensate Plaintiff for the actual cash value ("ACV") of his stolen personal property. | <u>Loss Payment Record.</u> Curtis Decl., Ex. 5 (GICA000969-971). | Undisputed. |
| 28. | General informed Plaintiff that he could recover an additional $59,375.02 for the difference between replacement cost ("RCV") and the already paid ACV (referred to as the "RCV Holdback") once and if Plaintiff provides receipts showing that the stolen property was actually replaced. | <u>Email to Plaintiff (Apr. 27, 2022).</u> Curtis Decl., Ex. 7. | Undisputed. |
| 29. | Plaintiff's Rule 26 initial written disclosures served on February 28, 2023 do not state that Plaintiff intends to seek recovery of the RCV Holdback. | <u>Plaintiff's Rule 26 Initial Written Disclosures.</u> Daza-Luu Decl., Ex. 9. | Disputed in Part. General has yet to provide full compensation for the stolen items taken from his residence. Plaintiff intends to seek recovery of the RCV Holdback. Plaintiff has refrained from replacing these stolen items out of concern that the funds allocated by General for their replacement may ultimately be required to address |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | the complete restoration of his flooring, especially if General persists in denying full settlement/payment of his insurance claim. Plaintiff's apprehension centers around the prospect of replacing personal property only to find himself financially constrained and incapable of covering the expenses associated with repairing the tile flooring. <br><br> Supporting Evidence: Khachunts Decl. ¶ 20. |
| 30. | Plaintiff's Rule 26 initial document disclosures do not include any documents related to Plaintiff's personal property claim. | Daza-Luu Decl., ¶ 15. | Disputed in Part. General has yet to provide full compensation for the stolen items taken from his residence. Plaintiff intends to seek recovery of the RCV Holdback. Plaintiff has refrained from replacing these stolen items out of concern that the funds allocated by General for their replacement may ultimately be |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | required to address the complete restoration of his flooring, especially if General persists in denying full settlement/payment of his insurance claim. Plaintiff's apprehension centers around the prospect of replacing personal property only to find himself financially constrained and incapable of covering the expenses associated with repairing the tile flooring. <br><br> Supporting Evidence: Khachunts Decl. ¶ 20. |
| 31. | Plaintiff's original and supplemental interrogatory responses do not state that Plaintiff seeks to recover RCV Holdback as a measure of contract damages in this lawsuit. | Plaintiff's Original and Supplemental Responses to Interrogatory No. 18. Daza-Luu Decl., Ex. 10. | Disputed in Part. General has yet to provide full compensation for the stolen items taken from his residence. Plaintiff intends to seek recovery of the RCV Holdback. Plaintiff has refrained from replacing these stolen items out of concern that the funds allocated by General for their replacement |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | may ultimately be required to address the complete restoration of his flooring, especially if General persists in denying full settlement/payment of his insurance claim. Plaintiff's apprehension centers around the prospect of replacing personal property only to find himself financially constrained and incapable of covering the expenses associated with repairing the tile flooring.<br><br>Supporting Evidence: Khachunts Decl. ¶ 20. |
| 32. | Plaintiff produced no receipts in response to General's further document requests specifically seeking the production of any and all documents evidencing that Plaintiff is entitled to recover the RCV Holdback. | General's Requests for Production of Documents, Set Two. Daza-Luu Decl., Ex. 11.<br><br>Daza-Luu Decl., ¶ 15. | Undisputed. |
| 33. | As of the date of his deposition on August 2, 2023, Plaintiff testified | Deposition Transcript of Plaintiff (Excerpt). | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
|  | that he had not produced any receipts for stolen items he actually replaced. | Daza-Luu Decl., Ex. 6 (76:18-77:17). |  |
| 34. | Plaintiff filed his original and operative Complaint on November 17, 2022. | Complaint. ECF 1-2. | Undisputed. |
| 35. | The causes of action in the Complaint are breach of contract and breach of the implied covenant of good faith and fair dealing, with Plaintiff generally alleging entitlement to punitive damages. | Complaint. ECF 1-2. | Undisputed. |
| 36. | The specific allegations in the Complaint concern the damaged tile floors in the kitchen of Plaintiff's home. Plaintiff alleges that the damaged tiles cannot be repaired to achieve a "reasonably uniform appearance." | Complaint, ¶¶ 8-24. ECF 1-2. | Disputed in Part. Plaintiff has alleged additional allegations besides the damaged tiles not being able to be repaired. <br><br>Supporting Evidence: Keosian Decl. ¶ 2; Exhibit. A. |
| 37. | Plaintiff alleges that the burglary "caused significant property damage to PLAINTIFF'S PROPERTY, including the tile flooring of the property." | Complaint, ¶ 9. ECF 1-2. | Undisputed. |
| 38. | Plaintiff alleges the "flooring that Blake Services [sic] was not one | Complaint, ¶ 19. ECF 1-2. | Undisputed. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | that would be considered reasonable [sic] uniform in appearance with the tile PLAINTIFF had installed in his PROPERTY […]." | | |
| 39. | Plaintiff alleges that the damaged tiles cannot be repaired to achieve a "reasonably uniform appearance." | Complaint, ¶¶ 16-19. ECF 1-2. | Undisputed. |
| 40. | The Complaint does not include allegations concerning the personal property portion of Plaintiff's claim, including with respect to the RCV Holdback. | Complaint. ECF 1-2. | Disputed in Part. General has yet to provide full compensation for the stolen items taken from his residence. Plaintiff intends to seek recovery of the RCV Holdback. Plaintiff has refrained from replacing these stolen items out of concern that the funds allocated by General for their replacement may ultimately be required to address the complete restoration of his flooring, especially if General persists in denying full settlement/payment of his insurance claim. Plaintiff's apprehension centers around the prospect |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | of replacing personal property only to find himself financially constrained and incapable of covering the expenses associated with repairing the tile flooring. <br><br> Supporting Evidence: Khachunts Decl. ¶ 20. |
| **Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails Because there is no Bad Faith Absent a Breach of Contract** | | | |
| 41. | See JAF 1-40. | See JAF 1-40. | See Plaintiff's Responses to JAF 1-40. |
| **Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails Under the Genuine Dispute Doctrine** | | | |
| 42. | See JAF 1-40. | See JAF 1-40. | See Plaintiff's Responses to JAF 1-40. |
| **Plaintiff is not Entitled to Recover Punitive Damages Because his Bad Faith Claim Fails and Punitive Damages are Unavailable for Breach of Contract** | | | |
| 43. | See JAF 1-40 | See JAF 1-40 | See Plaintiff's Responses to JAF 1-40. |

**Plaintiff Vahe Khachunts contends that the following other material facts are in dispute:**

| No. | Fact | Supporting Evidence | Defendant's Response |
|---|---|---|---|
| 44. | The policy was in full force and effect at the time | Declaration of Vahe Khachunts | Undisputed that the Policy was in effect |

Case 2:22-cv-09325-SPG-KS   Document 27-1   Filed 10/03/23   Page 24 of 51   Page ID #:617

| | | | |
|---|---|---|---|
| | of the incident and included coverage for Plaintiff's residence. | ("Khachunts Decl.") ¶ 4. | at the time of the burglary pursuant to its complete terms. *See* Policy, Ex. 1 to Curtis Decl.  This additional fact should have no impact on the granting of General's Motion, in whole or in part. |
| 45. | The next day following the burglary, Plaintiff timely reported the incident to General and opened an insurance claim. | Khachunts Decl. ¶ 5. | Undisputed but should have no impact on the granting of General's Motion, in whole or in part. |
| 46. | Plaintiff noticed that there was damage to the floor tiles in the kitchen and also reported the damage to General. | Khachunts Decl. ¶ 6. | Undisputed but should have no impact on the granting of General's Motion, in whole or in part. |
| 47. | Plaintiff engaged the services of Calstar Restoration, to conduct a comprehensive assessment of the damage inflicted upon his residence, including on the compromised tiles. | Khachunts Decl. ¶ 10. | Undisputed but should have no impact on the granting of General's Motion, in whole or in part. |
| 48. | Calstar Restoration indicated that the only viable resolution was to replace all the tiles on the first floor because it would not be possible to establish a reasonable uniform | Khachunts Decl. ¶ 11. | Undisputed that Calstar Restoration provided an opinion as to the repair of the two chipped tiles. The dispute was outlined above such |

22

| | | | |
|---|---|---|---|
| | appearance in Plaintiff's home with a repair. | | that this fact should have no impact on the granting of General's Motion, in whole or in part. |
| 49. | Calstar Restoration conducted a dwelling inspection of Plaintiff's home and provided a written estimate of their findings. The total estimate for repairs was $176,078.76. | Khachunts Decl. ¶ 12. | Undisputed that Calstar Restoration provided an opinion as to the repair of the two chipped tiles. The dispute was outlined above such that this fact should have no impact on the granting of General's Motion, in whole or in part. |
| 50. | General failed to properly and fairly investigate Plaintiff's claim, specifically with regard to Plaintiff's claim for damaged tile under the dwelling portion of his policy. | Declaration of Maribeth Danko ("Danko Decl.") ¶ 18. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 51. | General's failures led to serious, unreasonable, unfair, and extensive delays in calculating and paying Plaintiff's claim. | Danko Decl. ¶ 18. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 52. | Mr. Street brought sample tiles to Plaintiff's home to see if they would match or | Khachunts Decl. ¶ 15. | Undisputed that Mr. Street brought sample tiles to Plaintiff's home, which was set |

| | | | |
|---|---|---|---|
| | at least create a reasonable uniform appearance. | | forth in JAF 21. This additional fact should have no impact on the granting of General's Motion, in whole or in part. |
| 53. | The tiles he brought did not match nor did they create a reasonable uniform appearance because the difference in tiles was easily able to be seen. | Khachunts Decl. ¶ 15. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 54. | The sample tiles provided by Mr. Street and Blake Services bore no resemblance to the existing tile flooring in Plaintiff's residence, rendering such a replacement noticeable due to the comparison of different colors, especially the lack of wood grain brown colors within the tile. | Khachunts Decl. ¶ 16. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 55. | General failed to properly investigate Plaintiff's claim for tile coverage, and improperly delayed and reduced policy benefits without cause. | Danko Decl. ¶ 37. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |

| 56. | General ignored Plaintiff's own contractor estimate, then attempted to force non-standard "repairs" which led to extensive delays. | Danko Decl. ¶ 37. | Undisputed that General and Plaintiff disagree as to the requisite tile repair under the Policy, but Plaintiff has not submitted any evidence that General "ignored" Plaintiff's estimate apart from Plaintiff's retained expert's conclusory statement. |
|---|---|---|---|
| 57. | No one from Blake Services Inc. advised Mr. Brett Allen that they can repair the one broken tile. | Declaration of Zareh Keosian ("Keosian Decl.") ¶ 3; Ex. B, p. 44:11-20. | This is a mischaracterization of Mr. Allen's testimony, and given the lack of context, is a vague, ambiguous, and unintelligible "fact."  Mr. Allen simply testified that no one advised him that the divot, i.e. the dent/chip, in the tile could not be fixed, which is not an issue in dispute.  *See* Supp. Daza-Luu Decl. filed herewith pursuant to FRE 106 and FCRP 32(a)(6), Exh. 1, pp. 39:10 - 45:16.<br><br>Rather, it is undisputed that Blake Services has proposed a repair of the two chipped tiles (JAF 21-22), which is |

| | | | |
|---|---|---|---|
| | | | the subject of the present dispute. |
| 58. | Mr. Zane Street has not found a tile that matches Plaintiff's tile flooring. | Keosian Decl. ¶ 10; Ex. F, pp. 40:20-25; 41:1-7. | Undisputed that Mr. Street has not found the exact tile manufactured in Ukraine that Plaintiff originally used on the floor.  Mr. Street located a tile, pictured in the Joint Brief, which is of "like kind and quality" and according to Blake Services, would result in a "repair that most would never see." (*See* JAF 21.)  The question as to whether such tile complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide.<br><br>Further, Mr. Street testified during his deposition that the tiles from Daltile were "a match that would be difficult to see as I put in my report, yes.  I did – I forgot I almost tripped over that tile." Supp. Daza-Luu Decl. filed herewith |

| | | | |
|---|---|---|---|
| | | | pursuant to FRE 106 and FCRP 32(a)(6), Exh. 1, pp. 62:13-63:15. |
| 59. | General has yet to provide full compensation for the stolen items taken from Plaintiff's residence. | Khachunts Decl. ¶ 20. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 60. | Plaintiff has refrained from replacing the stolen items out of concern that the funds allocated by General for their replacement may ultimately be required to address the complete restoration of his flooring, especially if General persists in denying full settlement of the claim. | Khachunts Decl. ¶ 20. | It is undisputed that Plaintiff is not entitled to RCV Holdback, meaning there has been no breach of the Policy on such grounds. This additional fact should not impact the ruling on General's Motion. |
| 61. | During Mr. Zane Street's deposition, he testified that he was not a tile expert but rather a wood flooring expert. | Keosian Decl. ¶ 10; Ex. F, p. 7:16-19. | Undisputed but has no bearing on General's Motion where Ralph Padilla, who worked with Mr. Street on this file, is a tile expert. In fact, Mr. Street testified during his deposition that (1) he brought Mr. Padilla to all three inspections of |

| | | | Plaintiff's tile floors because he (Mr. Padilla) was a tile expert, and (2) had Mr. Padilla concluded the tile floors could not be repaired, that would be reflected in the Blake Services report attached as Ex. 2 to the Allen Decl. Supp. Daza-Luu Decl. filed herewith pursuant to FRE 106 and FCRP 32(a)(6), Exh. 2, pp. 60:14-61:6. |
| 62. | Mr. Zane Street informed Mr. Brett Allen that he was having difficulty locating a matching tile. | Keosian Decl. ¶ 10; Ex. B, p. 122:13-24. | Undisputed that Mr. Street has not found the exact tile manufactured in Ukraine that Plaintiff originally used on the floor.  Mr. Street located a tile, pictured in the Joint Brief, which is of "like kind and quality" and according to Blake Services, would result in a "repair that most would never see." (*See* JAF 21.)  The question as to whether such tile complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal |

| | | | |
|---|---|---|---|
| | | | issue for this Court to decide.<br><br>Further, Mr. Street testified during his deposition that the tiles from Daltile were "a match that would be difficult to see as I put in my report, yes.  I did – I forgot I almost tripped over that tile."  Supp. Daza-Luu Decl. filed herewith pursuant to FRE 106 and FCRP 32(a)(6), Exh. 2, pp. 62:13-63:15. |
| 63. | Mr. Brett Allen's own claim note in General's Claim File states: "spoke to rep from Blake Services on Thursday, states that they are having a hard time finding the tile in the home." | Keosian Decl. ¶ 4; Ex. C. | Undisputed that Mr. Street has not found the exact tile manufactured in Ukraine that Plaintiff originally used on the floor.  Mr. Street located a tile, pictured in the Joint Brief, which is of "like kind and quality" and according to Blake Services, would result in a "repair that most would never see." (*See* JAF 21.)  The question as to whether such tile complies with the Policy's loss settlement clause, and |

| | | | |
|---|---|---|---|
| | | | the pertinent claims regulations is a legal issue for this Court to decide.<br><br>Further, Mr. Street testified during his deposition that the tiles from Daltile were "a match that would be difficult to see as I put in my report, yes.  I did – I forgot I almost tripped over that tile." Supp. Daza-Luu Decl. filed herewith pursuant to FRE 106 and FCRP 32(a)(6), Exh. 2, pp. 62:13-63:15. |
| 64. | Rather than allowing for replacement of tiles to conform to a reasonably uniform appearance and to restore the damaged property to no less than its condition prior to the loss, General required Plaintiff to damage one section of the kitchen in order to "repair" another. | Danko Decl. ¶¶ 19, 23. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9.<br><br>This fact also mischaracterizes the proposed repair options put forward by Blake Services. (*See* JAF 21-22.) |
| 65. | Standard of Care would require replacement of the entirety of the tiles. | Danko Decl. ¶ 23. | This is not an additional fact, but a legal conclusion, |

| | | Declaration of Christopher Croisdale ("Croisdale Decl.") ¶ 13.<br><br>Declaration of Tim Howard ("Howard Decl.") ¶ 15. | which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
|---|---|---|---|
| 66. | Plaintiff's flooring specialist, Mr. Tim Howard, inspected Plaintiff's property on or about September 8, 2023 and on September 27, 2023. | Howard Decl. ¶ 5, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. |
| 67. | The repair of the damaged tile with the use of an epoxy filler would not work due to the size of the damage to the tile and the pattern within the tile. | Howard Decl. ¶ 8, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's |

| | | | |
|---|---|---|---|
| | | | Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Howard's findings and conclusions remain the subject of expert discovery.<br><br>Finally, Mr. Howard appears to be opining on the use of the Daltile match found by Mr. Street.  The question as to whether such tile complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide. |
| 68. | An attempt to remove an existing tile from under the refrigerator and using that tile in place of the damaged tile would not work for 2 reasons: (1) removing an installed tile with thinset and mortar bed will most likely break and or chip the tile being removed; and (2) since the tile is installed in a herringbone pattern, | Howard Decl. ¶ 9, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where |

| | | | |
|---|---|---|---|
| | obtaining a full tile will be impossible as all the tiles that are installed under the kitchen cabinets still have exposure in the kitchen area beyond the kitchen cabinet. | | General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Howard's findings and conclusions remain the subject of expert discovery. |
| 69. | If a tile is successfully removed intact, the replacement of that tile will have to be replaced with a tile that is not within a reasonable and uniform appearance and it will be visible in the open area. | Howard Decl. ¶ 9, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Howard's findings and conclusions remain the subject of expert discovery.<br><br>Finally, Mr. Howard appears to be opining on the use of the Daltile match found by Mr. Street.  The question as to |

| | | | whether such tile complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide. |
|---|---|---|---|
| 70. | Any attempt to obtain a tile from the border behind the refrigerator and/or cabinet will certainly cause damage to the tiles being removed, and the adjacent tiles as well. | Howard Decl. ¶ 9, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Howard's findings and conclusions remain the subject of expert discovery.<br><br>Finally, Mr. Howard appears to be opining on the use of the Daltile match found by Mr. Street. The question as to whether such tile complies with the |

| | | | Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide. |
|---|---|---|---|
| 71. | The tile flooring was installed over a mortar bed which would need to be removed and replaced as the removal of the tile flooring will affect the integrity of the mortar bed. | Howard Decl. ¶ 10, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Howard's findings and conclusions remain the subject of expert discovery. |
| 72. | The repair method suggested by Blake Services, Inc. would not take the property back to its pre-loss condition. | Howard Decl. ¶ 10, Ex. B. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |

| 73. | The detaching and resetting of the kitchen cabinets may be warranted by another vendor as cabinets were installed on top of the kitchen cabinets. | Howard Decl. ¶ 11, Ex. B. | This portion of Mr. Howard's retained expert opinion assumes that the kitchen cabinets must be detached. Nonetheless, the estimate does include amounts for a cabinet/appliance detachment. |
| --- | --- | --- | --- |
| 74. | However, if this approach is taken, it would unveil the incongruent tile floors, which could become conspicuous if Plaintiff chooses to reconfigure either the floor layout or the kitchen area. | Howard Decl. ¶ 12, Ex. B. | Plaintiff's "fact" is premised on an improper reading of the loss settlement clause and the pertinent claim regulations.  At bottom, this is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 75. | Based on the photos from the reports from Blake Services, Inc., the tile options presented by Blake Services, Inc. was similar, but not within a reasonable and uniform appearance. One can easily see the tiles are noticeably different. | Howard Decl. ¶ 13, Ex. B. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |

| | | | |
|---|---|---|---|
| 76. | During Mr. Howard's second inspection on September 27, 2023, he took another tile sample to Plaintiff's property that was also similar to the existing tile, but it was not within a reasonable and uniform appearance. | Howard Decl. ¶ 14, Ex. B. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 77. | All the tiles on the first floor of the subject property should be removed and replaced in order to have the uniform appearance it did prior to the loss. | Howard Decl. ¶ 15, Ex. B. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 78. | Plaintiff has been significantly underpaid for the dwelling repairs portion of his insurance claim in connection with the August 27, 2021 burglary. | Croisdale Decl. ¶ 15, Ex. B. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 79. | Plaintiff submitted an estimate from The Croisdale Group for $127,847.18. | Croisdale Decl. ¶ 10, Ex. B. | Undisputed that The Croisdale Group, another of Plaintiff's retained experts, provided an opinion as to the repair of the two chipped tiles. The dispute was outlined above such that this fact should have no impact on the granting of General's |

| | | | Motion, in whole or in part. |
|---|---|---|---|
| 80. | Mr. Croisdale's scope of loss portrays the necessary repairs that need to be made in order to return Plaintiff's property to the condition that it was in prior to the damage resulting from the August 27, 2021 burglary. | Croisdale Decl. ¶ 12, Ex. B. | Undisputed that The Croisdale Group, another of Plaintiff's retained experts, provided an opinion as to the repair of the two chipped tiles. The dispute was outlined above such that this fact should have no impact on the granting of General's Motion, in whole or in part. |
| 81. | Replacing only two (or a few) tiles would not be adequate as the tiles would not create a reasonable uniform appearance with the remaining continuous tile flooring in the subject property. | Croisdale Decl. ¶ 13, Ex. B. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 82. | The new tiles would be noticeable under normal lighting conditions. | Croisdale Decl. ¶ 13, Ex. B. | Whether the Daltile procured by Blake Services complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide. For such reasons, this is not an additional fact, but a legal conclusion, which is improperly included in a Joint |

| | | | Appendix of Facts. *See* MSJ Standing Order at p. 9. |
|---|---|---|---|
| 83. | It is not possible to remove the tile flooring from underneath the subzero or cabinets without breaking the tiles and/or the surrounding/adjacent tiles. | Croisdale Decl. ¶ 14, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Croisdale's findings and conclusions remain the subject of expert discovery. |
| 84. | Any such attempt would create further damage to the property and the tile floors therein. | Croisdale Decl. ¶ 14, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where |

| | | | General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Croisdale's findings and conclusions remain the subject of expert discovery. |
|---|---|---|---|
| 85. | If this method were to be implemented, the mismatched tile floors would be exposed and noticeable if Plaintiff (or any future individual who may own the home) ever decides to reorganize the floorplan of the subject property and/or the kitchen. | Croisdale Decl. ¶ 14, Ex. B. | General has no basis to dispute that Plaintiff's retained expert conducted its own investigation. However, Plaintiff's retained expert's opinion on the tile repair should have no impact on the granting of General's Motion, in whole or in part, where General relied on its consultant, Blake Services, during the course of the claim investigation. Further, Mr. Croisdale's findings and conclusions remain the subject of expert discovery.<br><br>Finally, Mr. Croisdale's appears to be opining on the use of the Daltile match found by Mr. Street. The question |

| | | | as to whether such tile complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide. |
|---|---|---|---|
| 86. | General disregarded the estimate from Calstar Restoration. | Danko Decl. ¶ 32. | Undisputed that General and Plaintiff disagree as to the tile repair, but Plaintiff has not submitted any evidence that General "ignored" Plaintiff's estimate. |
| 87. | General did not attempt to properly and fairly reconcile the Calstar Restoration estimate with its own scope and estimate. | Danko Decl. ¶ 32. | This is not an additional fact, but a legal conclusion, which is improperly included in a Joint Appendix of Facts. *See* MSJ Standing Order at p. 9. |
| 88. | On or about September 12, 2023, Mr. Zareh Jack Keosian emailed, sent a letter via FedEx, and made a website submission request to Blake Services, Inc. to inquire whether they were willing to come to Plaintiff's residence to remove the tiles under the refrigerator without breaking them and to perform the work pursuant | Keosian Decl. ¶¶ 5-6, Ex. D. | General has no reason to dispute that Plaintiff's counsel attempted to contact Blake Services during the course of this lawsuit. General notes that Plaintiff attempted to amend his complaint to add Blake Services as a defendant. While General did obtain reports and an |

| | | | |
|---|---|---|---|
| | to the two reports written by them and Mr. Street. | | estimate from Blake Services in connection with the claim, Blake Services is not a General employee.  Where Plaintiff demands that Blake Services perform work on his home subject to a "guarantee" and given the litigation history, it is not unreasonable that Blake Services has been hesitant in agreeing to this demand by Plaintiff.

This is not an additional "fact" but posturing by Plaintiff in connection with General's Motion. |
| 89. | Blake Services did not respond to any of Mr. Keosian's correspondence. | Keosian Decl. ¶¶ 5-6, Ex. D. | General has no reason to dispute that Plaintiff's counsel attempted to contact Blake Services during the course of this lawsuit.  General notes that Plaintiff attempted to amend his complaint to add Blake Services as a defendant.  While General did obtain reports and an estimate from Blake Services in |

| | | | |
|---|---|---|---|
| | | | connection with the claim, Blake Services is not a General employee.  Where Plaintiff demands that Blake Services perform work on his home subject to a "guarantee" and given the litigation history, it is not unreasonable that Blake Services has been hesitant in agreeing to this demand by Plaintiff.

This is not an additional "fact" but posturing by Plaintiff in connection with General's Motion. |
| 90. | On or about September 19, 2023, Mr. Zareh Jack Keosian emailed Mr. Zane Street to inquire whether he was willing to come to Plaintiff's residence to remove the tiles under the refrigerator without breaking them and to perform the work pursuant to both of his reports. | Keosian Decl. ¶¶ 7-8, Ex. E. | General has no reason to dispute that Plaintiff's counsel attempted to contact Blake Services during the course of this lawsuit.  General notes that Plaintiff attempted to amend his complaint to add Blake Services as a defendant.  While General did obtain reports and an estimate from Blake Services in connection with the claim, Blake Services |

| | | | |
|---|---|---|---|
| | | | is not a General employee.  Where Plaintiff demands that Blake Services perform work on his home subject to a "guarantee" and given the litigation history, it is not unreasonable that Blake Services has been hesitant in agreeing to this demand by Plaintiff.  This is not an additional "fact" but posturing by Plaintiff in connection with General's Motion. |
| 91. | Mr. Street did not respond to any of Mr. Keosian's correspondence. | Keosian Decl. ¶¶ 7-8, Ex. E. | General has no reason to dispute that Plaintiff's counsel attempted to contact Blake Services during the course of this lawsuit.  General notes that Plaintiff attempted to amend his complaint to add Blake Services as a defendant.  While General did obtain reports and an estimate from Blake Services in connection with the claim, Blake Services is not a General employee.  Where |

| | | | |
|---|---|---|---|
| | | | Plaintiff demands that Blake Services perform work on his home subject to a "guarantee" and given the litigation history, it is not unreasonable that Blake Services has been hesitant in agreeing to this demand by Plaintiff.<br><br>This is not an additional "fact" but posturing by Plaintiff in connection with General's Motion. |
| 92. | On or about September 27, 2023, Mr. Zareh Jack Keosian emailed Mr. Ralph Padilla to inquire whether he was willing to come to Plaintiff's residence to remove the tiles under the refrigerator without breaking them and to perform the work pursuant to the two reports written by Blake Services, Inc. | Keosian Decl. ¶¶ 11-12, Ex. G. | General has no reason to dispute that Plaintiff's counsel attempted to contact Blake Services during the course of this lawsuit.  General notes that Plaintiff attempted to amend his complaint to add Blake Services as a defendant.  While General did obtain reports and an estimate from Blake Services in connection with the claim, Blake Services is not a General employee.  Where Plaintiff demands that Blake Services |

| | | | |
|---|---|---|---|
| | | | perform work on his home subject to a "guarantee" and given the litigation history, it is not unreasonable that Blake Services has been hesitant in agreeing to this demand by Plaintiff.<br><br>This is not an additional "fact" but posturing by Plaintiff in connection with General's Motion. |
| 93. | Mr. Padilla declined Mr. Keosian's request to do the work. | Keosian Decl. ¶¶ 11-12, Ex. G. | General has no reason to dispute that Plaintiff's counsel attempted to contact Blake Services during the course of this lawsuit. General notes that Plaintiff attempted to amend his complaint to add Blake Services as a defendant. While General did obtain reports and an estimate from Blake Services in connection with the claim, Blake Services is not a General employee. Where Plaintiff demands that Blake Services perform work on his home subject to a |

| | | | |
|---|---|---|---|
| | | | "guarantee" and given the litigation history, it is not unreasonable that Blake Services has been hesitant in agreeing to this demand by Plaintiff.<br><br>This is not an additional "fact" but posturing by Plaintiff in connection with General's Motion. |
| 94. | Mr. Zane Street testified that he saw a difference in the tiles recommended by Blake Services compared to the tiles in Plaintiff's residence. | Keosian Decl. ¶ 10, Ex. F, pp. 50:14-25; 51:1-9; 64:4-12. | Undisputed that Mr. Street has not found the exact tile manufactured in Ukraine that Plaintiff originally used on the floor. Mr. Street located a tile, pictured in the Joint Brief, which is of "like kind and quality" and according to Blake Services, would result in a "repair that most would never see." The question as to whether such tile complies with the Policy's loss settlement clause, and the pertinent claims regulations is a legal issue for this Court to decide. |

|  |  |  | Further, Mr. Street testified during his deposition that the tiles from Daltile were "a match that would be difficult to see as I put in my report, yes.  I did – I forgot I almost tripped over that tile." He also testified that he believes the term reasonably uniform appearance" is subjective and does not know the standard is applied, or who applies it.  Supp. Daza-Luu Decl. filed herewith pursuant to FRE 106 and FCRP 32(a)(6), Exh. 2, pp. 47:14-48:21, 62:13-63:15. |
|---|---|---|---|

Dated:   October 3, 2023          NICOLAIDES FINK THORPE
                                   MICHAELIDES SULLIVAN LLP

                          By:_____/s/ Patricia A. Daza-Luu_____
                                   Patricia A. Daza-Luu
                                   Jacob F. Meli
                                   Attorneys for Defendant General
                                   Insurance Company of America

Dated:   October 3, 2023          KEOSIAN LAW LLP

                          By:_____/s/ Zareh Jack Keosian_____
                                   Harout Greg Keosian
                                   Zareh Jack Keosian
                                   Eileen Keusseyan
                                   Attorneys for Plaintiff Vahe Khachunts

## **Statement of Authority to File**

Per Civil L.R. 5-4.3.4(a)(2)(i), I attest that all signatories on this document and on whose behalf the filing is submitted concur in the filing's content and have authorized the filing of this document.

Dated:  October 3, 2023

By:     */s/ Patricia A. Daza-Luu*
Patricia A Daza-Luu